UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYPH, INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>ZOOM VIDEO COMMUNICATIONS, INC.,<br><br>            Defendant. | Case No.  22-cv-00561-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 54 |

Now before the Court for consideration is the motion to dismiss filed by Zoom Video Communications, Inc. ("Zoom").  The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY GRANTS, IN PART, AND DENIES, IN PART, Zoom's motion, with leave to amend.

## BACKGROUND

The Court recited the factual background underlying this patent infringement dispute in its Order granting, in part, Zoom's motion to dismiss Plaintiff Cyph, Inc.'s ("Cyph") original complaint.  *See Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, 2022 WL 1556417, at *1 (N.D. Cal. May 17, 2022).  In brief, Cyph alleges Zoom uses end-to-end encryption technology in its products and services and could not have provided that technology without practicing the inventions claimed in six of Cyph's United States patents: No. 9,948,625 (the "'625 Patent"), No. 10,701,047 (the "'047 Patent"), No. 10,020,946 (the "'946 Patent"), No. 9,794,070 (the "'070 Patent"), and No. 10,003,465 (the "'465 Patent"), and No. 9,954,837 (the "'837 Patent") (collectively the "Asserted Patents").[1]

---

[1]      Cyph originally alleged that Zoom infringed U.S. Patent No. 9,906,369, but it has dropped

1    The Court concluded that Cyph sufficiently identified the accused products.  However, it

2    granted Zoom's motion to dismiss because it determined Cyph's allegations did "nothing more

3    than allege Zoom infringes by reciting the relevant claim language verbatim" and did not include

4    any allegations that "the actions of Zoom's customers can be attributed to Zoom." *Cyph*, 2022

5    WL 1556417, at *3-*4.  Because Cyph failed to state a claim for direct infringement, the Court

6    dismissed its claims for contributory and induced infringement.  *Id.*

7    Cyph has amended to include allegations about non-party Keybase, and about how

8    Keybase products allegedly infringe the claims of the relevant patents.  (FAC ¶¶ 41-47, 58-64,

9    119-133.)[2]  By reference to several Zoom publications, Cyph also provides additional detail on

10    how Zoom Products allegedly infringe the claims of the Asserted Patents.  (*See* FAC ¶¶ 18-22, 48-

11    57, 69-70, 76, 82, 85, 94, 100, 107, 111.)  Cyph also alleges that the term "'User,' as recited in the

12    claims of the Asserted Patents corresponds to the 'Front-end Component' or 'Client' as defined in

13    the Cyph System Architecture as described in the Specification of each of the Asserted Patents."

14    (*Id.*, ¶ 21.)  Although there are references to human "users" in the Specification, Cyph alleges that

15    the term "User" as recited in the claims does not refer to a "human or any other entity not under

16    Cyph's control.'"  (*Id.*; *see also e.g.*, FAC Ex. A, '625 patent, col. 3, ll. 21-26.)

17    **ANALYSIS**

18    **A.**    **Applicable Legal Standards.**

19    Zoom again moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  A

20    motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings

21    fail to state a claim upon which relief can be granted.  A court's "inquiry is limited to the

22    allegations in the complaint, which are accepted as true and construed in the light most favorable

23    to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the

24    liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his

25    'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the

---

27    the claims regarding that patent.  The claims relating to the '837 Patent are asserted only against
Keybase, Inc, which Zoom acquired in May 2020.  (*See* FAC, ¶ 3.)

28    [2]    Exhibit R to the FAC is a red-line version showing the amendments.  (Dkt. No. 47-17.)

United States District Court
Northern District of California

1  elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

2  (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Pursuant to *Twombly*, a plaintiff cannot

3  merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to

4  relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff

5  pleads factual content that allows the court to draw the reasonable inference that the defendant is

6  liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*,

7  550 U.S. at 556).

8      In a patent case, a plaintiff cannot satisfy the pleading standards set forth in *Twombly* and

9  *Iqbal* "by reciting the claim elements and merely concluding that the accused protect has those

10  elements.  There must be some factual allegations that, when taken as true, articulate why it is

11  plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*,

12  4 F.4th 1342, 1353 (Fed. Cir. 2021) (internal quotations and citations omitted).[3]  A patentee "need

13  not prove its case at the pleadings stage"; it also is not required "to plead infringement on an

14  element-by-element basis." *Id.* at 1352; *see also Phonometrics, Inc. v. Hospitality Franchise Sys.,

15  Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000).  Instead, the patentee must allege sufficient facts to

16  "place the potential infringer on notice of what activity is being accused of infringement." *Bot

17  M8*, 4 F.4th at 1352.  "The level of detail required in any given case will vary depending upon a

18  number of factors, including the complexity of the technology, the materiality of any given

19  element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.*

20  at 1353.

21      If the allegations are insufficient to state a claim, a court should grant leave to amend,

22  unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th

23  Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th

24  Cir. 1990).  However, if a plaintiff has previously amended a complaint, a court has "broad"

25  discretion to deny leave to amend. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.

26

27  _____

28  [3]     Prior to 2015, a patentee generally could satisfy the requisite pleading standards by utilizing Form 18.  However, that year the Supreme Court abrogated the form. *See, e.g., Lifetime Indus., Inc. v. Trim Lock, Inc.*, 869 F.3d 1372, 1376-77 (Fed. Cir. 2017).

3

1990) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

**B.      The Parties' Evidence.**

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted).  However, the Court may consider "documents incorporated into the complaint by reference, and matters of which [the Court] may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).

Zoom submits two exhibits to support its motion, each of which are cited in Cyph's claim charts as providing support for its infringement contentions: an excerpt from Keybase Book Proofs ("Proofs"); and a Zoom white paper entitled "E2E Encryption for Zoom Meetings" version 3.2 dated October 29, 2021 ("E2Ev.3.2").  (Dkt. No. 54-1, Declaration of Andrew T. Jones, ¶¶ 3-4, Exs. A-B.)  Cyph does not dispute that those documents are authentic, and it relies on each of those documents to support its claims.  Therefore, the Court considers them under the incorporation by reference doctrine.

Cyph submitted three exhibits with its opposition to support its arguments regarding the claims of the '047 Patent: two excerpts from Wikipedia pages and a dictionary definition of the term "technique."  (Dkt. No. 58, Declaration of Carl I. Brundidge, ¶¶ 3-5., Exs. 1-3.)  Because the Court did not rely on any of these documents, it denies Cyph's request as moot.

**C.      The Court Grants, in Part, and Denies, in Part, Zoom's Motion to Dismiss the Direct Infringement Claims.**

**1.      Single Actor.**

Each of the Asserted Patents are directed to methods or systems and methods.  "Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).  When method claims are at issue and more than one actor is involved "in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement." *Id.*  In *Akamai*, the Federal Circuit

United States District Court
Northern District of California

4

1   determined that may occur: (1) when an "entity directs or controls others' performance"; or "(2)

2   where the actors form a joint enterprise." *Id.*

3          Zoom argues that the patents differentiate between the "front-end component" and the

4   "user" of that component, which renders Cyph's allegations implausible because a single entity

5   does not perform each step of the claimed methods.  As set forth above, Cyph alleges the term

6   "user" does not refer exclusively to a human and alleges that, as used in the claims, "user"

7   "corresponds to the 'Zoom Client' in the Zoom System Architecture [because] the 'User' and the

8   'Zoom Client' perform the same or similar functions in the respective System Architectures."

9   (*See, e.g.*, FAC, ¶ 66; Ex. G, at 5 n.1.)  That is, Cyph argues that the term can also be construed to

10  apply to Zoom's software.  Therefore, according to Cyph, it is plausible for "User" to be the

11  "Front-End Component" that Zoom would control.

12         In *Bot M8*, the Federal Circuit noted that even though a plaintiff is not required to prove its

13  case at the motion to dismiss stage, there may be times when the plaintiff "may subject its claims

14  to early dismissal by pleading facts that are inconsistent with the requirements of its claims."  4

15  F.4th at 1346 (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1348-50 (Fed. Cir. 2018)).   A

16  plaintiff needs to allege claims that are "*plausible*" and not merely possible.  *Twombly*, 550 U.S. at

17  570 (emphasis added).  Here, Cyph does not plausibly allege the term "user" is software written

18  and controlled by Zoom.  For example, in the '625 patent specification, Cyph states that devices

19  can be used to provide feedback to a "user" in "any form of sensory feedback" such as visual,

20  auditory, or tactile feedback.  (FAC Ex. A, '625 patent, col. 9, ll. 27-28.)  Cyph also stated that an

21  input from "the user can be received in . . . acoustic, speech, or tactile" form.  (*Id.*, col. 9, ll. 31-

22  32.)  Cyph argues this language demonstrates it is plausible to read  "Front-end Component," as

23  used in the claims, as software.  However, Cyph's own patent states that a front-end component is

24  "a client computer" not software.  (*Id.*, col. 9, l. 37.)  In addition, it is not plausible that software

25  can provide or would need visual, auditory or tactile feedback.

26         Accordingly, the Court concludes Cyph has not sufficiently alleged that the term "user"

27  encompasses software controlled by Zoom and fails to allege that Zoom practices each step of the

28  method claims in the Asserted Patents.  Therefore, the Court GRANTS, IN PART, Zoom's motion

United States District Court
Northern District of California

5

1    to dismiss, as applied to the '625 Patent, the '047 Patent, the '070 Patent, the '465 Patent and the

2    '837 Patent.  The Court notes that the single actor analysis does not apply to the '946 patent,

3    which does not use the term "user" in the claims.  The Court provides Cyph leave to amend, with

4    direction to point to specific portions of the patent claims and specifications that make it plausible

5    to read "user" to enable Zoom to practice each step of the claimed methods.

6         **2.    Individual Patents.**

7         Even though it seems as though "user" does not plausibly read as software, many of

8    Cyph's other allegations are sufficient to state a claim for relief.  Therefore, while Cyph must still

9    correct the deficiencies regarding the term "user," the Court addresses Zoom's other arguments.

10        The Federal Circuit, in *Bot M8*, criticized a "blanket element-by-element pleading standard

11   for patent infringement," favoring instead a flexible inquiry into "whether the factual allegations in

12   the complaint are sufficient to show that the plaintiff has a plausible claim for relief."  4 F.4th at

13   1352.  In its review of the district court's ruling, the Federal Circuit determined the critical

14   elements of each patent and looked to see whether the complaint included specific factual

15   allegations to meet those claim elements.  For instance, the Federal Circuit determined that two of

16   the patents required a control device that executed a fault inspection program before the game was

17   started.  *Id.* at 1355.  The Federal Circuit then determined that the plaintiff sufficiently alleged

18   infringement because it "identifie[d] specific error messages that are displayed" when faults were

19   detected.  *Id.*  For another patent, the Federal Circuit determined that the claims required "gaming

20   information including a mutual authentication program on the same memory."  *Id.* at 1354

21   (internal quotation marks omitted).  The court then determined that the plaintiff did not satisfy the

22   pleading standard because it "did not plausibly allege that gaming information and a *mutual*

23   authentication program are stored together on the same memory."  *Id.* at 1355 (emphasis in

24   original).

25        In accordance with the Federal Circuit's approach in *Bot M8*, this Court will identify the

26   critical elements of each of the Asserted Patents and then determine whether Cyph has provided

27   specific factual allegations to meet those claim elements, placing Zoom on notice of what activity

28   is being accused of infringement.  *See Bot M8*, 4 F.4th at 1352.

United States District Court
Northern District of California

6

### a.    The '625 patent.

The '625 patent claims an Encrypted Group Communication Method where, in order "to begin" and facilitate "a communication session among a group of users," a first user generates a symmetric key that the first user then distributes to each user in the group, and "additional users are added to the existing communication system when the first user distributes . . . the generated shared symmetric key."  (FAC Ex. A, '625 patent, col. 10, ll. 20-35.)

Zoom argues that Cyph's allegations are insufficient because Cyph cites to documents that establish an additional user is added using a new key, not the existing key.  Further, Zoom argues the cited documents state that end-to-end encryption only allows participants in a given meeting to have access to the encrypted communication, and that therefore, it would be impossible to add a new user.  Zoom's arguments fail for two reasons.

First, Cyph's claim charts provide direct quotes from Zoom publications that put Zoom on notice as to what Cyph alleges infringes its patents.  With regards to the claim limitation of adding new users, Cyph cites to the E2E-v3.2 paper which describes new participants joining the meeting when they "have access to the shared meeting key MK" allowing each user to "encrypt and decrypt meeting streams accordingly."  (FAC, ¶ 66; Ex. G, at 3.)  The claim charts identify the MK key as generated when the meeting leader first joins the meeting, and the leader then has "the responsibility of generating the shared meeting key . . . and distributing keys."  (Ex. G, at 4.)  This statement makes it plausible that in Zoom's products a first user generates a symmetric key that the user can then distribute to additional users to join the meeting.

Further, Zoom's contention that a new key *must* be generated any time an additional user is added is not reflected in the documentation cited.  The E2E-v3.2 document states that "[t]he leader *should* trigger a rekey whenever a participant enters or leaves [a] meeting." (E2Ev3.2, at 16.) (emphasis added).  While Zoom argues that its products require a new key to add a user, the document's language merely seems to suggest, rather than to require, that the leader generate a new key.  Accordingly, Cyph sufficiently alleges infringement of the '625 patent, and the Court DENIES Zoom's motion to dismiss this claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**b.     The '070 patent.**

The '070 patent claims a Method of Ephemeral Encrypted Communications where a first user asks a server to open a communication session, the server assigns the communication session a unique ephemeral communication session identifier, the first user sends the session identifier to a second user over a "second communication channel," which the second user then uses to join the session.  (FAC Ex. D, '070 patent, col. 10, ll. 30-51.)

Zoom argues that Cyph does not plausibly allege the use of a "second communication channel" to transmit the session identifier because the excerpts that Cyph cites to in its Claim Charts do not mention a second communication channel.

The Court agrees with Zoom that Cyph's quotations in the Claim Chart do not provide notice as to what comprises the "second communication channel" within Zoom's products.  The Claim Chart contains three different quotations that reference verifying a phone number, generating an MK key, and discuss who is responsible for generating and distributing keys.  (FAC, ¶ 97; Ex. J, at 3.)  None of these quotes references a "second communication channel."

In its opposition brief, Cyph points to language from the Zoom E2E-v3.2 paper that it argues could support its allegations that the Accused Products include a first and second communication channel.  Cyph acknowledges that this language was not cited in its Claim Chart and seeks leave to amend.  "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (9th Cir. 2014).  Accordingly, the Court GRANTS Zoom's motion to dismiss this claim.  Because the Court cannot say it would be futile, it will grant Cyph leave to amend.

**c.     The '837 patent.**

The '837 patent claims a method of Multi-Factor Authentication During Encrypted Communications where a first user and a second user can communicate with each other after each user validates the other's identification when a "one-on-one encryption message [is] directly sent . . . through [a] second [communication] channel."  (FAC Ex. N, '837 patent, col. 10, ll. 22-31.) The second communication channel can be either a Short Message Service (SMS) channel, a Multimedia Messaging Service (SMS) channel, an email channel, or a social media service

8

1    channel." (*Id.*, col. 10, ll. 31-35.)

2         Zoom argues that Cyph does not identify a Zoom product that sends a direct message

3    through a second communication channel to verify an identity.  Zoom argues that Cyph merely

4    points to social media or other web accounts that users can use to verify each other.  Zoom

5    emphasizes that the "Proofs" that Cyph cites to are "static links" and not direct communications

6    between two users.

7         The Court agrees with Zoom.  Cyph alleges that Zoom's "Keybase Proofs" would satisfy

8    the claim element of a "second communication channel."  (FAC, ¶ 125; Ex. P, at 3.)  However, the

9    Proofs document does not reference anything resembling a communication channel.  Rather, the

10   documents instruct that the best way to verify a Keybase account "is to tell [someone else] in

11   person" or, alternatively, to check the "other social accounts" of the user to verify that the

12   accounts match.  (FAC, Ex. P, at 3.)  Neither of these forms of verification involve a message

13   being sent through a communication channel, which is a required element of the claim.

14        Cyph does not provide any convincing argument as to why the claim limitations are

15   present in the Zoom products.  Cyph merely points the Court to the claim limitations it laid out in

16   the '625 and '070 patents, but neither shows the direct message claim limitation present in the

17   Zoom products.  Accordingly, the Court GRANTS Zoom's motion to dismiss this claim, with

18   leave to amend.

19              **d.    The '465 patent.**

20        Claim 1 of the '465 patent claims a Method of Encrypting Authentication Information

21   when a first user generates a shared symmetric key to exchange authentication information, then

22   said first user distributes the shared key to each communicating party, and the other users can then

23   exchange authentication information using the symmetric key.  (FAC Ex. E, '465 patent, col. 11,

24   ll. 50-58.)  The shared symmetric key is generated using an "out-of-band communication."  (*Id.*,

25   col. 12, l. 6.)

26        Zoom argues Cyph's allegations about this patent are insufficient because, like the '837

27   patent, Cyph does not allege a second communication channel used to exchange authentication

28   information.  However, Zoom's argument is misplaced.  First, "second communication channel" is

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1    the critical element in the '837 patent but that term cannot be found in claim 1 of the '465 patent.

2    Second, the record suggests the communication channels claimed in the '837 patent and the '465

3    patent may not be used for the same purposes.  For example, the "out-of-band communications" in

4    the '465 patent are used to "generate a shared symmetric key," while the "second communication

5    channel of the '837 patent is used to authenticate another user.  (*Compare* '465 patent, col. 12, l.

6    6., *with* '837 patent, col. 10, ll. 22-31.)

7          Further, Cyph has pointed to specific factual content in the E2E-v3.2 publication that puts

8    Zoom on notice as to what it is accused of infringing.  (FAC, ¶ 103; Ex. K.)  For example, to meet

9    the claim limitation "distributing the generated shared symmetric key to each communicating

10   party in the communications group," Cyph points to section 3.4 of the E2E-v3.2 paper which

11   states that the "Meeting leader" "will have the responsibility of generating the shared meeting key

12   . . . and distributing keys."  (FAC, Ex. K, at 2.)  The other parts of the claim chart similarly satisfy

13   Cyph's pleading responsibility.  Accordingly, the Court DENIES Zoom's motion to dismiss this

14   claim.

15               **e.    The '047 patent.**

16         The '047 patent claims an Encrypted Group Communication Method where a first user

17   generates a shared symmetric key to start "a long-lived session," and the first user distributes the

18   key to each user in the group.  (FAC Ex. B, '047 patent, col. 10, ll. 17-24.)  The users in the group

19   can then communicate with encryption, with each encrypted group communication comprising "a

20   short-lived secure communication system."  (*Id.*, col. 10, ll. 25-34.)

21         Zoom argues that Cyph's allegations are implausible because Cyph attempts to tie an end-

22   to-end encryption meeting with the Zoom chat encryption, two products that are, allegedly,

23   incompatible with each other.  Zoom's argument fails for two reasons.  First, Zoom relies on

24   statements made in the E2E-v3.2 paper.  However, Cyph relies on the Zoom Security Guide from

25   February 2021 for the claim limitation in question, not the E2E-v3.2 paper.  The Zoom Security

26   Guide states that "Advanced chat encryption allows for a secured communication where only the

27   intended recipient can read the secured message."  This statement makes it plausible that a chat

28   can be encrypted within an encrypted meeting.

1    Second, regardless of whether Zoom's argument is correct, it is a merits argument not

2    suitable for disposition at the motion to dismiss stage.  At the motion to dismiss stage, courts

3    analyze whether there are "factual allegations that, *when taken as true*, articulate why it is

4    plausible that the accused product infringes the patent claim."  *Bot M8*, 4 F.4th at 1353 (emphasis

5    added).  Here, Cyph alleges that Zoom's products read on the claim limitations because the Zoom

6    Security Guide describes Zoom Chat as a "feature of Zoom Meetings that enable users to chat and

7    share files one-one or in groups." (FAC, ¶ 79; Ex. H, at 1.)  Taking Cyph's allegations as true, a

8    chat feature within a Zoom meeting reads on the claim limitations of a short-lived communication

9    system within a long-lived session.  Accordingly, the Court DENIES Zoom's motion to dismiss

10   this claim.

11                              **f.      The '946 Patent.**

12   The '946 patent claims a Multi-Key Encryption Method where a client computing device

13   downloads an encrypted data block that includes a server-stored symmetric key, and the client

14   computing device then decrypts the data block with a previously stored symmetric key.  (FAC Ex.

15   C, '946 patent, col. 10, ll. 25-32.)  The client computer then generates a new shared-symmetric

16   key, creates a new encrypted data block, transmits the data block to the servers, wherein the server

17   decrypts and overwrites the old server symmetric key with the new key.  (*Id.*, col. 11, ll. 32-43.)

18   Zoom argues that Cyph's claimed method requires storing a decrypted key on a server,

19   something that is fundamentally antithetical to the idea of end-to-end encryption.  Specifically,

20   Zoom alleges that its end-to-end encryption requires keys to always remain hidden from a server

21   while Cyph's patent allows a server to decrypt and store a key.

22   Similar to its argument for the '047 patent, Zoom presents a merits argument, rather than

23   an argument about the sufficiency of the allegations.  Further, Cyph's '946 claim chart provides

24   specific references to Keybase documents that identify the Zoom products that allegedly read on

25   the claim terms.  (FAC, ¶ 130; Ex. Q.)  For example, for the claim limitation of "generating a new

26   shared-symmetric key" Cyph points to the "Keybase Block" document, which includes the

27   statement that "[o]nce she has established keys as above, Alice can start encrypting blocks." (Ex.

28   Q, at 3.)  This is sufficient at the motion to dismiss stage to put Zoom on notice of the allegedly

United States District Court
Northern District of California

11

1    infringing activity.  *See Bot M8*, 4 F.4th at 1353.  Accordingly, the Court DENIES Zoom's motion

2    to dismiss this claim.

3    **D.      The Court Grants Zoom's Motion to Dismiss the Indirect Infringement Claims.**

4          Cyph's complaint alleges two theories of indirect infringement: (1) induced infringement

5    under 35 U.S.C. § 271(b), and (2) contributory infringement under 35 U.S.C. § 271(c).

6          **1.      Induced Infringement.**

7          Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be

8    liable as an infringer." 35 U.S.C. § 271(b). "To prevail on inducement, the patentee must show,

9    first that there has been direct infringement, and second that the alleged infringer knowingly

10   induced infringement and possessed specific intent to encourage another's infringement."  *Kyocera*

11   *Wireless Corp. v. ITC,* 545 F.3d 1340, 1353–54 (Fed.Cir.2008) (quoting *Minn. Mining & Mfg. Co.*

12   *v. Chemque, Inc.,* 303 F.3d 1294, 1304–05 (Fed.Cir.2002)).

13         Zoom argues that Cyph cannot allege indirect infringement because Cyph's direct

14   infringement theory relies on Zoom performing all infringing steps.  Cyph argues that it did plead

15   indirect infringement, as well as direct infringement, because it alleged that third party account

16   owners "enable (i.e. turn-on) end-to-end encryption for meetings."  (FAC, ¶ 50.)

17         "Liability for indirect infringement of a patent requires direct infringement by a third

18   party."  *Fortinet, Inc. v. Forescout Techs., Inc.*, 543 F. Supp. 3d 814, 836 (N.D. Cal. 2021)

19   (internal quotations omitted).  Cyph claims that third parties infringe the patents by simply

20   enabling/turning on the Zoom programs.  However, Cyph relies on a theory that Zoom performs

21   all essential steps of the method claims to support its claim that Zoom directly infringes the

22   Asserted Patents.  (*See, e.g.*, FAC, ¶ 54 ("All of the steps and/or functions of E2EE encryption . . .

23   are performed by the Zoom System Architecture including the Zoom Client and Servers, not a

24   human or any other entity not under Zoom's control . . . ."))  That theory appears inconsistent with

25   its claims for induced infringement.  Further, Cyph does not appear to plead these claims in the

26   alternative.  *See, e.g.*, Fed. R. Civ. P. 8(d)(2).  Accordingly, the Court GRANTS Zoom's motion,

27   but it will grant Cyph leave to amend.

28

United States District Court
Northern District of California

12

1

### 2.    The Court Grants Zoom's Motion to Dismiss the Contributory Infringement Claims.

2        Zoom also argues that Cyph's allegations of contributory infringement are deficient

3   because they consist of conclusory assertions that simply recite legal standards.  Under 35 U.S.C.

4   section 271(c), "[w]hoever offers to sell or sells within the United States . . . a component of a

5   patented machine . . . for use in practicing a patented process" is liable for contributory

6   infringement if: (1) the component constitutes "a material part of the invention"; (2) the alleged

7   infringer knows that the component is "especially made or especially adapted for use in an

8   infringement of [the] patent"; and (3) the component is "not a staple article or commodity of

9   commerce suitable for substantial noninfringing use."  35 U.S.C. § 271(c).  To state a claim

10  for contributory infringement, "a plaintiff must, among other things, plead facts that allow an

11  inference that the components sold or offered for sale have no substantial non-infringing uses."  *In*

12  *re Bill of Lading Transmission & Processing Sys. Pat. Litig.,* 681 F.3d 1323, 1337 (Fed. Cir.

13  2012).

14        Here, Cyph's allegations relating to contributory infringement consists of one assertion:

15  "[u]pon information and belief" the Accused Products "constitute a material part of the Asserted

16  claims and are not staple articles or commodities of commerce suitable for substantial non-

17  infringing use."  (FAC, ¶ 156.)  This paragraph provides no factual allegations as to whether the

18  accused products are capable of substantial non-infringing uses or not.  Accordingly, the Court

19  GRANTS Zoom's motion to dismiss as it relates to contributory infringement, with leave to

20  amend.

21  **E.    The Court Grants Zoom's Motion to Dismiss the Willful Infringement Claims.**

22        Section 284 of the Patent Act directs courts to award a prevailing claimant "damages

23  adequate to compensate for the infringement" and "may increase the damages up to three times the

24  amount found or assessed."  35 U.S.C. § 284.  Thus, "a finding of direct infringement is a

25  prerequisite for willful infringement."  *AlterG Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d

26  1133, 1143 (N.D. Cal. 2019).  Further, "willfulness is relevant [only] to damages

27  calculations."  *Google LLC v. Princeps Interface Techs. LLC*, No. 19-cv-06566-EMC, 2020 WL

28  1478352, at *2 (N.D. Cal. Mar. 26, 2020).  The Supreme Court explained that "courts should

United States District Court
Northern District of California

1  generally only award enhanced damages . . . in 'egregious cases typified by willful

2  misconduct.'" *Id.* (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 106 (2016)).  Such

3  damages "are not to be meted out in a typical infringement case, but are instead designed as a

4  punitive or vindictive sanction for egregious infringement behavior" that is "willful, wanton,

5  malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a

6  pirate." *Halo*, 579 U.S. at 103-04 (internal quotations mark omitted).  "Since *Halo*, courts in the

7  [Northern District of California] have required willful infringement claims to show both

8  knowledge of the ... [p]atents *and* egregious conduct in order to survive a motion to

9  dismiss." *Google*, 2020 WL 1478352, at *2 (internal quotation omitted).

10         Cases from this District provide insight into when plaintiff's allegations are conclusory and

11  do not rise to the level needed to plausibly allege willful infringement.  For instance, in *Fortinet,*

12  *Inc. v. Forescout Techs., Inc.*, the plaintiff argued that its allegations of willful infringement were

13  sufficient because it provided evidence of its pre-suit outreaches to the defendant concerning its

14  patent portfolio.  No. 20-cv-03343-EMC, 2020 WL 6415321, at *14 (N.D. Cal. Nov. 2, 2020).  In

15  spite of that outreach, the defendant continued to sell the accused products and services.  *Id.*

16  However, the court rejected the plaintiff's argument and held that the pleadings were insufficient

17  because the complaint only pled willful infringement "in a single paragraph, repeated for each

18  patent" declaring that the defendant "is acting recklessly and continues to willfully, wantonly, and

19  deliberately engage in acts of infringement of the asserted patents." *Id.* at *15.  This did not allege

20  conduct that "was 'egregious' under *Halo*." *Id.*

21         Similarly, in *Google LLC v. Princeps Interface Techs. LLC*, the court found that even

22  though the patentee satisfied the knowledge requirement by "specifically nam[ing] the patent at

23  issue" in its complaint, its allegations that Google's infringement was willful were insufficient

24  because the patentee's only facts establishing egregious conduct were a software update after the

25  plaintiff filed its complaint.  No. 19-cv-06566-EMC, 2020 WL 1478352, at *3 (N.D. Cal. Mar. 26,

26  2020).  The court concluded the allegations about the software update were not enough to plead

27  egregious conduct because it they tended to show an attempt a good faith attempt to avoid

28  infringement by designing around the patent.  *Id.*

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1    Further, in *Finjan, Inc. v. Cisco Sys.*, the plaintiff's willful infringement allegations stated

2  only that the "[d]efendant has sold and continues to sell the accused products and services."  No.

3  17-cv-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017).  The court dismissed the

4  plaintiff's willful infringement claims because the plaintiff made "no specific factual allegations

5  about [the defendant's] subjective intent, or . . . behavior that would suggest its behavior was

6  'egregious.'  Instead, [the plaintiff] ha[d] simply made conclusory allegations of knowledge and

7  infringement, which, considered in the totality of circumstances . . . [was] not enough to plausibly

8  allege egregiousness."  *Id.* (internal quotation marks and citations omitted).

9    Here, Cyph's willful infringement claims do not demonstrate that Zoom's behavior was

10  egregious.  Cyph supports its willful infringement claim by alleging that "Zoom [had] knowledge

11  of its infringement of the Asserted Patents at least upon the receipt of CYPH's October 28, 2022

12  letter . . . and the service of this Complaint at the latest," and that Zoom still proceed to update its

13  services and products.  (FAC, ¶ 136.)  The Court concludes the allegations here are analogous to

14  the allegations in the cases cited above.  Although Cyph alleges that Zoom continued with an

15  update of its software after it received the complaint, there are "no specific factual allegations

16  about [the defendant's] subjective intent, or . . . behavior that would suggest [Zoom's] behavior

17  was 'egregious.'"  *Finjan*, 2017 WL 2462423, at *5.  Accordingly, the Court GRANTS the motion

18  to dismiss Cyph's claims for willful infringement, with leave to amend.

19                          **CONCLUSION**

20    For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART,

21  Zoom's motion to dismiss, and it will grant Cyph one final opportunity to amend its complaint.

22  Should Cyph wish to amend its complaint, it may file an amended complaint no later than

23  December 21, 2022.  Zoom shall answer or otherwise respond by January 18, 2023.

24    **IT IS SO ORDERED**.

25  Dated: November 22, 2022

26

27                    JEFFREY S. WHITE
                     United States District Judge
28