TIMOTHY C. SAULSBURY (SBN 281434)
tsaulsbury@mofo.com
ERIC P. BERGER (admitted *pro hac vice*)
eberger@mofo.com
ANDREW L. PERITO (SBN 269995)
aperito@mofo.com
JOYCE C. LI (SBN 323820)
joyceli@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: 415-268-7000
Facsimile: 415-268-7522

ANDREW T. JONES (SBN 313619)
andrewjones@mofo.com
MORRISON & FOERSTER LLP
2100 L St. NW, Suite 900
Washington, DC 20037
Telephone: 202-887-1500
Facsimile: 202-887-0763

Attorneys for Defendant
ZOOM VIDEO COMMUNICATIONS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| CYPH, INC.,<br><br>            Plaintiff,<br><br>   v.<br><br>ZOOM VIDEO COMMUNICATIONS, INC.,<br><br>            Defendant. | Case No.    4:22-cv-00561-JSW<br><br>**DEFENDANT ZOOM VIDEO COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF CYPH, INC.'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     February 24, 2023<br>Time:    9:00 a.m.<br>Ctrm:    5 – 2nd Floor<br>Judge:   Honorable Jeffrey S. White |

1

## NOTICE OF MOTION AND MOTION

2        PLEASE TAKE NOTICE THAT on February 24, 2023, at 9:00 a.m., or as soon thereafter

3  as may be heard, before The Honorable Jeffrey S. White, in Courtroom 5 of the above-entitled

4  court, located at 1301 Clay Street, Oakland, CA 94612, Defendant Zoom Video Communications,

5  Inc. ("Defendant" or "Zoom") by its attorneys, hereby moves to dismiss with prejudice all claims

6  in Plaintiff Cyph, Inc.'s ("Plaintiff" or "Cyph")'s Second Amended Complaint, pursuant to

7  Federal Rule of Civil Procedure 12(b)(6). Plaintiff's Second Amended Complaint fails to set

8  forth any claims for relief that are plausible on their face, for the reasons set forth in detail in

9  Defendant's accompanying Memorandum in Support of Defendant's Motion to Dismiss. This

10  Motion is based upon this Notice of Motion and Memorandum of Points and Authorities in

11  support thereof, the Second Amended Complaint and other pleadings on file in this matter, the

12  arguments of counsel, and all other material which may properly come before the Court at or

13  before the hearing on this Motion.

14

15  Dated: January 18, 2023               MORRISON & FOERSTER LLP

16                        By:        */s/ Andrew L. Perito*

17                                  ANDREW L. PERITO

18                        Attorneys for Defendant
ZOOM VIDEO COMMUNICATIONS, INC.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

        A.      The Parties and the Asserted Patents ..................................................... 2

        B.      Cyphs' Original Complaint and Zoom's First Motion to Dismiss.......... 3

        C.      Cyph's First Amended Complaint and Zoom's Second Motion to Dismiss.......... 3

        D.      Cyph's Second Amended Complaint ....................................................... 5

III.    LEGAL STANDARD ......................................................................................... 5

IV.     ARGUMENT ....................................................................................................... 6

        A.      Cyph Once Again Fails to Remedy the Defects in its Direct Infringement
                Claims ................................................................................................... 6

        B.      Cyph Further Fails to Set Forth Facts Supporting a Reasonable Inference
                that Zoom Infringes the '837, '070, '465, and '946 Patents ................. 8

        C.      Cyph Again Fails to State a Claim for Indirect Infringement ............... 11

                1.      Cyph Has Not Alleged Direct Infringement by Any Party, Much
                        Less By Any Third Party ........................................................... 11

                2.      Cyph Again Failed to Adequately Allege All Elements of
                        Contributory Infringement ......................................................... 12

        D.      Cyph Again Fails to State a Claim for Willful Infringement................. 13

V.      CONCLUSION ................................................................................................. 14

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Akamai Techs., Inc. v. Limelight Networks, Inc.,*
5  797 F.3d 1020 (Fed. Cir. 2015) (en banc) ................................................................ 6, 7

6 *Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................................... 5
7

*Bell Atl. Corp. v. Twombly,*
8  550 U.S. 544 (2007) ....................................................................................................... 3, 5

9 *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.,*
10  681 F.3d 1323 (Fed. Cir. 2012) ................................................................................... 13

11 *Bot M8 LLC v. Sony Corp. of Am.,*
  4 F.4th 1342 (Fed. Cir. 2021) ..................................................................................... 5, 6
12

13 *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.,*
  845 F.3d 1356 (Fed. Cir. 2017) ..................................................................................... 7
14

15 *Exxon Chemical Pats. v. Lubrizol Corp.,*
  935 F.2d 1263 (Fed. Cir. 1991) ..................................................................................... 9
16

*Fantasy Sports Props., Inc. v. SportsLine.com, Inc.,*
17  287 F.3d 1108 (Fed. Cir. 2002) ..................................................................................... 7

18 *Fortinet, Inc. v. Forescout Tech., Inc.,*
  543 F.Supp.3d 814 (N.D. Cal. 2021) .................................................................. 11, 13, 14
19

20 *Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
  579 U.S. 93 (2016) ....................................................................................................... 13
21

*Kyocera Wireless Corp. v. ITC,*
22  545 F.3d 1340 (Fed. Cir. 2008) ................................................................................... 11

23 *Lifetime Indus., Inc. v. Trim-Lock, Inc.,*
  869 F.3d 1372 (Fed. Cir. 2017) ..................................................................................... 5
24

25 *Microsoft Corp. v. AT & T Corp.,*
  550 U.S. 437 (2007) ....................................................................................................... 7

26 *Nalco Co. v. Chem-Mod, LLC,*
  883 F.3d 1337 (Fed. Cir. 2018) ..................................................................................... 7
27

28 *Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.,*
  363 F.3d 1306 (Fed. Cir. 2004) ................................................................................... 11

*Ricoh Co., Ltd. v. Quanta Comp. Inc.*
  550 F.3d 1325 (Fed. Cir. 2008) ................................................................................... 7

*Smith v. Garlock Equip. Co.,*
  658 F. App'x 1017 (Fed. Cir. 2016) ......................................................................... 9

*Travel Sentry, Inc. v. Tropp*,
  877 F.3d 1370 (Fed. Cir. 2017) ................................................................................... 7

**Statutes**

35 U.S.C. § 271(c) ............................................................................................................ 12

35 U.S.C. § 281 .................................................................................................................. 9

35 U.S.C. § 284 .......................................................................................................... 13, 14

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .................................................................. 5

1

### I.   INTRODUCTION

Plaintiff Cyph, Inc. ("Cyph") has now been provided with three chances to adequately plead its claims of infringement against Defendant Zoom Video Communications, Inc. ("Zoom"). Yet again, its allegations fall far short of the applicable pleading standards and, in many instances, fall short of coherence.  Cyph has had ample opportunity to make its case and its multiple attempts have established that it cannot do so.

Cyph's first attempt to plead infringement failed because did not plausibly allege that the accused products practiced each limitation of at least one asserted claim.  *See* Dkt. No. 45.  In dismissing the complaint, the Court ordered Cyph to further elucidate its infringement theories. *Id.*  But when Cyph attempted to do so in its First Amended Complaint ("FAC"), these further explanations only served to expose the fundamental flaws in its case.  Dkt. No. 47.  In dismissing Cyph's FAC, the Court admonished that a complaint for patent infringement must contain allegations sufficient to place a potential infringer on notice of what is being accused must do more than merely recite claim elements and conclude that the accused product has those elements. Dkt. No. 85 ("Order re FAC") at 3.  From the conclusory, inconsistent, and largely unsupported nature of Cyph's third attempt to state a claim, it is apparent that it did not take these instructions to heart.

Cyph's Second Amended Complaint ("SAC") suffers from the same fundamental flaws identified by the Court in dismissing the FAC.  The Court cautioned against taking inconsistent positions from one claim to the next, yet Cyph once again advances direct and indirect infringement theories incompatible with one another.  The Court warned Cyph about interpreting claim terms in a manner facially inconsistent with the patent itself, but Cyph has continued to do just that in its present complaint.  The Court advised about the importance of providing specific factual support for claim elements and not merely reciting the legal standard, and again Cyph has elected to rely on conclusory assertions.

The SAC shifts from a direct infringement theory, in which Zoom directly performs each step of the asserted method claims, to a divided infringement theory, in which Zoom's users are responsible for certain of those steps.  Cyph alleges alternatively that those users are under

Zoom's "direction or control" or that they have entered into a "joint enterprise" with Zoom. These implausible allegations are wholly unsupported by any facts, and Cyph instead does nothing more than recite the elements of divided infringement and allege that Zoom satisfies them. As was the case with Cyph's two previous complaints, this fails to satisfy the applicable pleading standard.

Cyph's indirect infringement allegations fare no better. Beyond rephrasing and reiterating the allegations made in the FAC, the SAC does nothing to address the problems identified by the Court. Cyph's failure to adequately plead direct infringement—as well as its insufficient allegation that Zoom is itself the direct infringer—doom any potential indirect infringement claim. Even were Cyph able to overcome this insurmountable hurdle, its contributory infringement claim would nonetheless fail because the uncontroverted facts, as demonstrated by the very documents Cyph relies on and Cyph's own allegations in the SAC, establish that there are, in fact, substantial non-infringing uses for the Zoom platform.

Finally, the SAC fails to remedy the complete lack of any factual support for Cyph's claim that Zoom has willfully infringed the Asserted Patents. Beyond the bare (and false) assertion that it is a direct competitor with Zoom and that this somehow renders Zoom's conduct egregious and flagrant, Cyph has provided no justification for the "punitive" and "vindictive" sanction of treble damages. As the Court held in its previous order, Cyph's allegations are insufficient to state a claim for willful infringement.

The Court "grant[ed] Cyph **one final opportunity** to amend its complaint." Order re FAC, Dkt. No. 85 at 15 (emphasis added). Because Cyph's Second Amended Complaint fails to plead adequately any of its claims for relief, it should now be dismissed with prejudice.

## II.      FACTUAL BACKGROUND

### A.      The Parties and the Asserted Patents

Cyph claims to offer an end-to-end encryption ("E2EE") enabled communications and media platform that allows uncensored communications and information exchanges and incorporates its patented E2EE technologies. Dkt. No. 88 ("SAC") ¶¶ 15-16. Cyph's First Amended Complaint asserts claims from six patents: (1) U.S. Patent No. 9,948,625, entitled

"Encrypted Group Communication Method" (the "'625 Patent"); (2) U.S. Patent No. 10,701,047, also entitled "Encrypted Group Communication Method" (the "'047 Patent"); (3) U.S. Patent No. 10,020,946, entitled "Multi-key Encryption Method" (the "'946 Patent"); (4) U.S. Patent No. 9,794,070, entitled "Method of Ephemeral Encrypted Communications" (the "'070 Patent"); (5) U.S. Patent No. 10,003,465, entitled "A System and Method of Encrypting Authentication Information" (the "'465 Patent"); and (6) U.S. Patent No. 9,954,837, entitled "Method of Multi-Factor Authenication [sic] During Encrypted Communications" (the "'837 Patent") (together, the "Asserted Patents").

Zoom is headquartered in San Jose and has been developing innovative collaboration technologies since its founding in 2011. Zoom offers a variety of products related to digital communications, including video conferencing, webinars, chat, and phone, among others. *See, e.g.,* FAC. ¶ 34 (noting "Zoom Meetings, Zoom Marketplace, Zoom Video Webinars, Zoom Chat, Zoom Phone Systems, Zoom Events, Zoom Rooms and Workspaces, [and] Zoom Developer Platform"). Cyph asserts its patents against Zoom's suite of software products.

## B.   Cyphs' Original Complaint and Zoom's First Motion to Dismiss

On November 5, 2021, Cyph sued Zoom, asserting infringement of the '625, '047, '946, '070, and '465 patents, as well as U.S. Patent No. 9,906,369, (the "'369 Patent"), which is no longer asserted. Dkt. No. 1. Zoom moved to dismiss this complaint for running afoul of the applicable pleading standards. Dkt. No. 19 ("MTD"). On May 17, 2022, the Court issued an order granting-in-part Zoom's motion and dismissing Cyph's complaint with leave to amend. Dkt. No. 45. The Court concluded that Cyph's allegations did not satisfy the *Twombly* standard because they "do nothing more than allege Zoom infringes by reciting the relevant claim language verbatim." *Id.* at 5. The Court also noted that "[a]lthough Cyph has cited to source documents, those citations do not necessarily coincide with the claim language at issue." *Id.* at 6.

## C.   Cyph's First Amended Complaint and Zoom's Second Motion to Dismiss

On June 7, 2022, Cyph filed its First Amended Complaint ("FAC"). Like the original complaint, the FAC alleges that Zoom's E2EE-enabled videoconferencing products infringe the

Asserted Patents.  FAC ¶¶ 67, 80, 92, 98, 104.  And once again, Cyph elected to present the bulk of its infringement allegations in the form of attached charts, this time providing quotations from Zoom documents in place of its previous citations.  On this attempt, Cyph made three essential changes to its original pleading: (1) dropping the '369 Patent altogether and substituting the '837 Patent, (2) adding allegations against a non-party Zoom subsidiary, Keybase, and (3) adding arguments intended to establish that the term "user," as it appears in the claims, is a reference to a "Front-end Component."

On June 27, 2022, Zoom moved to dismiss the SAC on the basis that it, in many cases, failed to address the fundamental deficiencies in its initial Complaint and that, in its attempt to further elucidate its infringement theories, it exposed the fundamental flaws in its infringement theories.  Dkt. No. 54 ("MTD SAC").

On November 22, 2022, the Court issued an order granting, in part, and denying, in part, Zoom's motion to dismiss the FAC.  Order re FAC.  The Court concluded that, with respect to all Asserted Patents other than the '946 Patent, Cyph failed to identify a single actor responsible for all steps of the asserted method claims.  While the patents differentiated between the hardware-based "front-end component" and the "user" of that component, Cyph had identified the same instrumentality—the "Zoom Client" software—as satisfying both elements.  Accordingly, the Court concluded that "Cyph ha[d] not sufficiently alleged that the term 'user' encompasses software controlled by Zoom and fail[ed] to allege that Zoom practices each step of the method claims in the Asserted Patents."  *Id.* at 5.  Next, the Court examined the specific infringement theories for each of the Asserted Patents and concluded that the factual allegations were insufficient with respect to the '070 and '837 Patents.

Turning to indirect infringement, the Court further concluded that Cyph's induced infringement allegations were inconsistent with its theory that Zoom itself directly infringed by performing all essential steps of the method claims and that its contributory infringement claim was insufficiently supported by factual allegations that the accused products were not capable of substantial non-infringing uses.  Order re FAC at 12-13.  Finally, the Court also determined that Cyph did not provide sufficient factual support for its allegations of willful infringement and

1    failed to demonstrate that Zoom's behavior was "egregious" as required by law.  *Id.* at 14-15.

2    The Court granted Cyph "one final opportunity to amend its complaint."  *Id.* at 15.

3                    **D.    Cyph's Second Amended Complaint**

4         On December 21, 2022, Cyph filed its SAC.  As with its first two pleadings, the SAC

5    accused Zoom's E2EE-enabled videoconferencing products.  In the SAC, Cyph elected to drop its

6    infringement claim related to the '837 Patent, shifted to a theory of divided infringement in which

7    the actions of third-parties are attributable to Zoom, and attempted to bolster its indirect

8    infringement allegations.

9         **III.   LEGAL STANDARD**

10        Federal Rule of Civil Procedure 12(b)(6) instructs that a complaint should be dismissed

11   when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon

12   which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted)

13   (alteration in original).  The complaint must plead "enough facts to state a claim to relief that is

14   plausible on its face."  *Id.* at 570.  The "mere possibility of misconduct" is not enough.  *Ashcroft*

15   *v. Iqbal*, 556 U.S. 662, 679 (2009).  A complaint that alleges facts that are merely consistent with

16   liability "stops short of the line between possibility and plausibility" and should be dismissed.

17   *Twombly*, 550 U.S. at 546.  While the Court generally accepts a complaint's allegations as true, it

18   is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556

19   U.S. at 678.

20        In the patent infringement context, a complaint must "place the alleged infringer 'on

21   notice of what activity . . . is being accused of infringement.'"  *Lifetime Indus., Inc. v. Trim-Lock,*

22   *Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *K-Tech Telecomms., Inc. v. Time Warner*

23   *Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)).  "The level of detail required in any given

24   case will vary depending upon a number of factors, including the complexity of the technology,

25   the materiality of any given element to practicing the asserted claim(s), and the nature of the

26   allegedly infringing device."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir.

27   2021).  "Accordingly, a plaintiff cannot assert a plausible claim for infringement under the

28   *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused

1    product has those elements." *Id.*  Rather, "[t]here must be some factual allegations that, when

2    taken as true, articulate why it is plausible that the accused product infringes the patent claim."

3    *Id.*

4    **IV.    ARGUMENT**

5        **A.    Cyph Once Again Fails to Remedy the Defects in its Direct**

6            **Infringement Claims**

7        In its order dismissing Cyph's initial complaint, the Court found that Cyph had failed to

8    allege any act of direct infringement because it had not alleged that "all steps of a claimed method

9    are performed by or attributable to a single entity."  Dkt. No. 45 at 4-5, 7; *Akamai Techs., Inc. v.*

10   *Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc).  In its FAC, Cyph

11   attempted to remedy this by adding a footnote to its allegations, stating that:

12           The term "User" as recited in the claims corresponds to the "Front-
             end Component" or the "Client" as defined in the Cyph System
13           Architecture as described in the Cyph Specification.  Thus, the term
             "User" as recited in the claims corresponds to the Zoom Client" in
14           the Zoom System Architecture since the "User" and "Zoom Client"
             perform the same or similar functions in the respective System
15           Architectures.

16       *See e.g.,* FAC, Ex. J at 5 n.1.  The Court's most recent order found this to be implausible

17   because the patents themselves state that the "front-end component" to be "a client computer"

18   rather than mere software.  Order re FAC at 5.  Accordingly, the Court determined that Cyph had

19   not sufficiently alleged that the term "user" encompasses software controlled by Zoom and

20   therefore failed to allege that Zoom practices each step of the methods claimed in the Asserted

21   Patents.  *Id.* at 5-6.

22       In its third attempt, Cyph abandons its previous position altogether, now redefining the

23   term "user" as recited in the Asserted Patents:

24           The term "User" as recited in certain of the claims of the Asserted
             Patents corresponds to a human (not shown) and a computer system
25           600 as illustrated in Fig. 3 of the specification of each of the
             asserted patents, wherein the human provides "user inputs" (i.e.
26           visual, auditory, keystrokes, mouse clicks or tactile feedback) to the
             computer system 600 to cause the computer system 600 to "read the
27           inventive instructions on the program storage devices and follow
             these instructions to execute the methodology of the embodiments
28           herein" as recited in the Asserted Claims.

SAC, Ex. G at 5 n.1; *see also* Exs. H-K & P at n.1.[1]  Applying this definition, Cyph alleges that Zoom and human "users" each perform certain of the steps required by the claims of the Asserted Patents.  SAC ¶ 50.

In order to state a claim for direct infringement in which two separate entities are responsible for steps of a method claim, a patentee must establish that one entity is responsible for the other's performance, either by "direct[ing] or control[ing]" their actions, or by forming a "joint enterprise" with the other entity.  *See Akamai*, 797 F.3d at 1022.  In its SAC, Cyph attempts—and  fails—to allege both.  First, it alleges that Zoom directs and controls the performance of its users by "condition[ing]" the benefit of end-to-end encryption on performance of certain steps.  SAC ¶ 55.  But the Federal Circuit has repeatedly admonished that "mere guidance or instruction is insufficient" to show conditioned benefit.  *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1356, 1367 (Fed. Cir. 2017).  And the Federal Circuit has also established that software is just that: instructions.  See *Ricoh Co., Ltd. v. Quanta Comp. Inc.* 550 F.3d 1325, 1335 (Fed. Cir. 2008) ("[S]oftware is not itself a sequence of actions, but rather it is a set of instructions that directs hardware to perform a sequence of actions."); *Fantasy Sports Props., Inc. v. SportsLine.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002) ("Software is a set of instructions, known as code, that directs a computer to perform specified functions or operations."); *see also Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 447 (2007) (relying on Fantasy Sports to equate software with instructions).  In contrast, the cases in which the Federal Circuit has found a "conditioned benefit" have all involved such conditioning occurring in the physical world.  *See e.g., Eli Lilly*, 845 F.3d at 1366 (doctors conditioning patient treatment on their taking of folic acid); *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1383-84 (Fed. Cir. 2017) (defendant had a "memorandum of understanding" with the TSA to perform certain steps); *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1353 (Fed. Cir. 2018) (defendant paid a test facility to perform the method).

---

[1] Elsewhere, Cyph somewhat confusingly alleges that the term "User" corresponds to **both** the Zoom client and the human user of the client.  SAC ¶ 48.

1    Hedging its bets, Cyph also alleges that "through its various service agreements and

2    communications protocols, Zoom in combination with the human users, whether meeting

3    participants or 'Account owners and admins' form a joint enterprise in conducting E2EE

4    encryption communications. . . ." SAC ¶ 56.  Rather than provide any particularized factual

5    support for this allegation, however, Cyph merely regurgitates, in list form, the elements of a joint

6    enterprise.  *Id.*  This is clearly deficient.  The parenthetical exemplars provided by Cyph cannot

7    do anything to alter this conclusion.  These examples are conclusory and largely untethered to the

8    element they purportedly support.  The act of "conducting a communications session," for

9    instance, does not establish that Zoom and its users have "an equal right of control" such that they

10   have entered into a joint enterprise.  *Id.*  Likewise, Cyph's vague reference to "Zoom and 3rd

11   parties collecting service fees attributable to communications session" fails to support in any way

12   the conclusion that there is "a community of pecuniary interest" between Zoom and its users.  *Id.*

13       In sum, Cyph now admits that there are necessary steps in each of the Asserted Patents

14   (except for the '946 Patent, discussed below), which must be carried out by someone other than

15   Zoom.  Because direct infringement requires that all steps of a method claim must be attributable

16   to a single entity, Cyph was required to plead specific facts that make plausible Cyph's

17   allegations that Zoom either controls those third-parties or has entered into a joint enterprise with

18   them.  It has failed to do so.  Instead, Cyph relies on vague allegations and rote recitations of legal

19   elements.  Accordingly, the Court should dismiss Cyph's direct infringement allegations with

20   respect to the '625, '047, '070, '837, and '465 Patents.

**B.     Cyph Further Fails to Set Forth Facts Supporting a Reasonable**
**Inference that Zoom Infringes the '837, '070, '465, and '946 Patents**

23       Beyond the fundamental underlying flaw discussed above, several of Cyph's individual

24   allegations as to specific patents are also lacking, which form separate and independent bases for

25   dismissal of Cyph's claims as to each of those patents.  As an initial matter, Zoom notes that

26   Cyph apparently no longer properly asserts the '837 Patent.  It has been removed from the

27   definition of the "Asserted Patents" and the SAC lacks any allegation regarding the patent's valid

28   issuance, that Cyph owns the patent, or that Cyph has the exclusive right to sue for infringement

of the '837 Patent.  Those pleading failures alone preclude any viable infringement claim as to the '837 Patent.  35 U.S.C. § 281 ("A *patentee* shall have remedy by civil action for infringement of his patent.") (emphasis added); *see Exxon Chem. Pats. v. Lubrizol Corp.*, 935 F.2d 1263, 1265 (Fed. Cir. 1991) ("The proper focus is on whether the plaintiff actually pleaded the elements required by the patent laws for a patent infringement claim.").  Additionally, the minimal changes to the apparently vestigial claim chart (now re-lettered as SAC, Ex. P) do nothing to address the fundamental problems the Court noted in its previous order, namely that "[n]either of these forms of verification involve a message being sent through a communication channel, which is a required element of the claim."  Order re FAC at 9.  And perhaps more important, the allegations point only to functionality found in *Keybase*'s (a non-party) products—not any product sold or marketed by Zoom—and Cyph does not (and could not) allege any basis for piercing the corporate veil to attribute Keybase's conduct to Zoom.  *See Smith v. Garlock Equip. Co.*, 658 F. App'x 1017, 1027 (Fed. Cir. 2016) ("Acts of a subsidiary company are not imputed to a parent company unless evidence supports 'piercing the [corporate] veil.'") (quoting *United States v. Bestfoods*, 524 U.S. 51, 62 (1998)) (alterations in original).  Accordingly, to the extent Cyph continues to purport to assert infringement of the '837 Patent at all, its claim must be dismissed.

The Court previously found with respect to the '070 Patent that Cyph did not plausibly allege the use of a "second communication channel" to transmit a session identifier to a second user.  In response, Cyph now alleges that there are two communications channels: "a signaling channel to distribute cryptographic messages between participants in a meeting" and a second "channel" in which "meeting participants route control messages on TLS-tunnels over TCP, through MMR."  SAC, Ex. J at 3-4.  While Zoom disputes that these are, in fact, two separate channels, the Court need not reach that conclusion because Cyph's allegations suffer from an even more fundamental flaw—they have not alleged that either of these channels is used to distribute the "shared meeting key" identified by Cyph as the unique ephemeral communication session identifier.  *Id.*

Cyph's amended allegations regarding the '465 Patent demonstrate its fast and loose approach to infringement allegations.  When attempting to provide factual support for the claims

1    of the '465 Patent, Cyph does not bother to independently chart its allegations, but instead states

2    that:

3           Also, the same arguments presented with respect to the noted direct
            quotations from E2E-v3.2 and ZSG unequivocally identifying
4           features of Zoom's products and services that use first and second
            communication channels as recited in Claims 1 and 2 of the '070
5           Patent, apply as well to limitations regarding the use of "out-of-
            band communications" as recited in Claims 1, 6, and 17 of the '465
6           Patent.

7    SAC, Ex. K at 5.  But as the Court noted in its order, these terms (and the limitations in which

8    they are used in the patents' claims) are not interchangeable.  The "second communication

9    channel" of the '070 Patent and the "out-of-band communications" of the '465 Patent are not the

10   same limitation—and the claimed structures are not used for the same purposes in their respective

11   claims.  The "second communication channel" of the '070 patent is used to send a "session

12   identifier" that will allow a second user to join a communications session.  *See* '070 Patent, Claim

13   1.  The "out-of-band communications" of the '465 Patent, on the other hand, are used to generate

14   a shared symmetric key to exchange authentication information among a communications group.

15   *See* '465 Patent, Claim 1.  Cyph's attempt to elide these two separate claim limitations is both

16   procedurally and substantively deficient.

17          Finally, Cyph has also failed to allege facts demonstrating that the accused products meet

18   every limitation of the '946 Patent.[2]  The asserted claim of the '946 Patent requires, among other

19   things, that a server "decrypt[] the new encrypted data block and overwrite[] the server-stored

20   symmetric key with the new shared-symmetric key."  In support of this limitation, Cyph points to

21   a single line in Zoom's E2EE White Paper: "Participant Join (Leader) . . . 11. Posts (i, C) to the

22   'bulletin board.'"  SAC, Ex. I at 3.  While this may arguably identify how Zoom's server

23   allegedly **stores** a symmetric key, it fails to even allege that the server at any point **decrypts** that

24   key before storing it.  This is a required element of the asserted claims for which Cyph has failed

25

26          [2] Previously, Cyph's infringement charts had pointed to Keybase documents to support its
     allegations against Zoom.  In its present complaint, it has dropped these allegations and instead
27   focuses solely on Zoom products (with the exception of Cyph's Ex. P chart as to the '837 Patent,
     which Cyph no longer includes as an Asserted Patent, *see infra* at Section IV.B., pages 8-9).
28

1  to (and cannot) allege any factual support that it is performed by Zoom.  Cyph's infringement

2  claim for the '946 Patent must therefore be dismissed for failure to allege satisfaction of all

3  limitations of even a single claim by Zoom (or its users).

4          **C.**        **Cyph Again Fails to State a Claim for Indirect Infringement**

5                   **1.**        **Cyph Has Not Alleged Direct Infringement by Any Party,**

6                                        **Much Less By Any Third Party**

7        To state a claim for indirect infringement, whether by inducement or contributory

8  infringement, a patentee must first establish that there has been direct infringement by a third

9  party.  *Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004)

10  ("When indirect infringement is at issue, it is well settled that there can be no inducement or

11  contributory infringement absent an underlying direct infringement."); *Kyocera Wireless Corp. v.*

12  *ITC*, 545 F.3d 1340, 1353-54 (Fed. Cir. 2008) ("To prevail on inducement, the patentee must

13  show, first that there has been direct infringement, and second that the alleged infringer

14  knowingly induced infringement and possessed specific intent to encourage another's

15  infringement." (quotation marks omitted)).  As discussed above, *see infra* Section IV.A, *Cyph*

16  cannot identify a single entity to which each step of the claimed methods is attributable.  Instead,

17  it alleges that some steps are carried out by Zoom and that other steps are carried out by

18  individual users.  Because there is no direct infringer, there can be no indirect infringement.

19        Even if one were to accept Cyph's position that Zoom is responsible for the steps carried

20  out by its customers, the SAC still fails to state a claim for indirect infringement because indirect

21  infringement requires an underlying act of infringement **by a third party**.  *Fortinet, Inc. v.*

22  *Forescout Tech., Inc.*, 543 F. Supp. 3d 814, 836 (N.D. Cal. 2021) ("Infringement may be either

23  direct or indirect but 'liability for indirect infringement of a patent requires direct infringement'

24  by a third party." (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681

25  F.3d 1323, 1333 (Fed. Cir. 2012))).  Nowhere in Cyph's SAC does it allege that all steps of the

26  claimed methods are attributable to any third party.  Accordingly, there can be no indirect

27  infringement, whether by inducement or contributory infringement.

28

**2.      Cyph Again Failed to Adequately Allege All Elements of Contributory Infringement**

35 U.S.C. § 271(c) states that "[w]hoever offers to sell or sells within the United States . . . a component of a patented machine . . . for use in practicing a patented process" is liable for contributory infringement if: (1) the component constitutes "a material part of the invention"; (2) the alleged infringer knows that the component is "especially made or especially adapted for use in an infringement of [the] patent"; and (3) the component is "not a staple article or commodity of commerce suitable for substantial noninfringing use."  In its FAC, Zoom provided nothing more than a bare recitation of these elements, wholly unsupported by specific factual allegations: "Upon information and believe, at least videoconferencing, chat, webinar, and data exchange functions of Zoom Apps and Zoom Devices and Keybase Apps constitute a material part of the Asserted claims and are not staple articles or commodities of commerce suitable for substantial non-infringing use." FAC ¶ 156.  The Court recognized as much and dismissed the claim for failing to include any "factual allegations as to whether the accused products are capable of substantial non-infringing uses."  Order re FAC at 13.  In response, Cyph amended its complaint to add additional verbiage, but no additional factual support.  Once again, it alleges simply that the Zoom client and other elements of the Zoom platform constitute a "material part of the invention" and that these components are "not a staple article of commodity of commerce."  SAC ¶ 146.  This is insufficient to address the fundamental flaw previously identified by the Court.

More troubling is that the undisputed facts establish that the very elements identified by Cyph as the "material part of the invention" are, in fact, capable of substantial non-infringing use.  Cyph's SAC is replete with references to Zoom users needing to "enable" or "turb on" end-to-end encryption.  *See, e.g.*, SAC ¶¶ 33 ("Zoom offers for sale, sells, solicits and instructs users that if they wish to receive the benefits of E2EE-enabled communication they must … ***enable by selection*** E2EE encryption ….") (emphasis added), 35, 49 ("Account owners and admins can enable (i.e. turn-on) end-to-end encryption for meetings, providing additional protection ***when needed***." (emphasis added)), 50-52, 57, 107.  As noted previously, the documents to which Cyph cites in its claim charts recognize that ***end-to-end encryption is an entirely optional feature*** that

1  must be specifically selected by the user.  MTD FAC at 15; SAC ¶¶ 49-52.  "Where the product is

2  equally capable of, and interchangeably capable of both infringing and substantial non-infringing

3  uses, a claim for contributory infringement does not lie."  *In re Bill of Lading*, 681 F.3d at 1338.

4        **D.**      **Cyph Again Fails to State a Claim for Willful Infringement**

5            Finally, Cyph has once again been unable to plead facts that would support a finding of

6  enhanced damages under 35 U.S.C. § 284.  The treble damages permitted by that section "are not

7  to be meted out in a typical infringement case, but are instead designed as a 'punitive' or

8  'vindictive' sanction for egregious infringement behavior . . . [that is] willful, wanton, malicious,

9  bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."

10  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-04 (2016) (citing 35 U.S.C. § 284).  In

11  order to adequately state a claim for willful infringement, egregious conduct must be specifically

12  plead and supported by facts showing the plausibility of the allegation.  *See Fortinet*, 543 F.

13  Supp. 3d at 840 ("Since Halo, courts in this District have required willful infringement claims to

14  show both knowledge of the . . .[p]atents and egregious' conduct in order to survive a motion to

15  dismiss.") (quoting *Google LLC v. Princeps Interface Techs.*, No. 19-cv-06566-EMC, 2020 WL

16  1478352, at *2 (N.D. Cal Mar. 26, 2020)) (emphasis in original)).

17            In its last complaint, Cyph stated simply that "Zoom [had] knowledge of its infringement

18  of the Asserted Patents at least upon the receipt of CYPH's October 28, 2022 letter . . . and the

19  service of this Complaint at the latest" and that Zoom proceeding to update its services and

20  products.  FAC ¶ 136.  The Court correctly concluded that this was insufficient because there

21  were "no specific factual allegations about [the defendant's] subjective intent, or . . . behavior that

22  would suggest [Zoom's] behavior was 'egregious.'"  Order re FAC at 15 (quoting *Finjan, Inc. v.

23  Cisco Sys.,* No. 17-cv-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017)).  The

24  Second Amended Complaint does nothing to remedy Cyph's pleading failure.

25            Cyph adds only a single additional sentence to the allegations in its Second Amended

26  Complaint: "Moreover, Zoom's continued infringement against a direct competitor—in spite of

27  its knowledge of infringement—clearly indicates either wanton, malicious, bad faith, deliberate,

28  consciously wrongful, and/or flagrant desire to do harm against a direct competitor and

1   constitutes egregious behavior against CYPH." SAC ¶ 133. However, the conclusory assertion

2   that Zoom behaved wantonly, maliciously, and flagrantly simply because it is purported to be a

3   competitor is insufficient. *See Fortinet*, 543 F. Supp. 3d at 840-43 (conclusory allegations were

4   insufficient to establish that competitor knew its conduct was "egregious" or that it had acted with

5   "willful blindness"). Furthermore, as was the case in Cyph's previous complaint, its allegations

6   relate not the knowledge of Zoom itself, but rather to knowledge of the Asserted Patents by

7   Keybase—a Zoom subsidiary that is not a party to this case. Because Cyph has done nothing to

8   remedy the fatal pleading deficiency identified by the Court in its previous order the Court should

9   dismiss Cyph's claim for enhanced damages pursuant to 35 U.S.C. § 284.

10        **V.    CONCLUSION**

11        For the foregoing reasons, Zoom respectfully requests that the Court dismiss Cyph's

12   Second Amended Complaint in its entirety. As this is Cyph's third attempt to state a claim upon

13   which relief may be granted, Zoom further requests that dismissal be with prejudice. *See* Order re

14   FAC at 15 ("grant[ing] Cyph one final opportunity to amend its complaint.").

15

16    Dated:    January 18, 2023                Respectfully submitted,

17                                              MORRISON & FOERSTER LLP

18
                                               By: _____*/s/ Andrew L. Perito*_____
19                                                         ANDREW J. PERITO

20                                              Attorneys for Defendant
                                               ZOOM VIDEO COMMUNICATIONS, INC.
21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

      I hereby certify that, on January 18, 2023, I caused a copy of the foregoing document to be filed with the Clerk of the Court using CM/ECF which will send notifications of such filing to all counsel of record.

                                  */s/ Andrew L. Perito*

                                  ANDREW L. PERITO