CARL I. BRUNDIDGE (pro hac vice)
Cbrundidge@Brundidge-Stanger.com
DAVID E. MOORE (pro hac vice)
David.Moore@Brundidge-Stanger.com
BRUNDIDGE & STANGER, P.C.
1925 Ballenger Ave, Suite 560
Alexandria, VA 22314
Telephone: 703.684.1470
Facsimile: 703.684.1460

LEENA A. MAUSKAR (SBN 267828)
Leena.Mauskar@Brundidge-Stanger.com
BRUNDIDGE & STANGER, P.C.
626 Wilshire Blvd., Suite 410
Los Angeles, CA 90017
Telephone: 213-816-2010
Facsimile: 213-816-2011

Attorneys for Plaintiff
CYPH, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYPH, Inc.,<br>             Plaintiff,<br><br>                    v.<br><br>Zoom Video Communications, Inc.<br>             Defendant. | Case No. 4:22-cv-00561-JSW<br><br>*The Hon. Jeffery S. White*<br><br>**PLAINTIFF CYPH, INC.'S OPPOSITION TO DEFENDANT ZOOM VIDEO COMMUNICATIONS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br> *Filed concurrently:* [Proposed Order]<br><br>Date: February 24, 2023<br>Time: 9:00 a.m.<br>Courtroom: 5-2nd Floor |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS  ................................................................................ 2

III.  LEGAL STANDARD......................................................................................... 4

IV.   ARGUMENTS .................................................................................................... 5

    **A. Cyph Has Plausibly Alleged Infringement of The Asserted Patents** ...................... 5

    **B. Cyph Has Provided Sufficient Facts That Supports Zoom's Direct Infringement**

       **of the Asserted Patents.**........................................................................................ 15

    **C. Cyph Has Sufficiently Pled Indirect Infringement by Zoom.** .............................. 17

    **D. Cyph Has Sufficiently Pled Willful Infringement by Zoom.**................................. 17

V.    CONCLUSION................................................................................................... 18

PLAINTIFF'S OPP. TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED
COMPLAINT

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>                                                                                                    <u>Page</u>

3

4    *Akamai Techs., Inc. v. Limelight Networks, Inc.*,
        797 F.3d 1020 (Fed. Cir. 2015) (en banc)…………………………1, 2, 5, 6, 15, 16, 17

5    *Ashcroft v. Iqbal*,
        556 U.S. 662 (2009) ....................................................................................1, 3, 4, 9

6

7    *Bot M8 LLC v. Sony Corp. of Am.*,
        4 F.4th 1342, 1353 (Fed. Cir. 2021) .......................................4, 5, 6, 8, 9, 10, 11, 13, 14, 16

8    *Bell Atl. Corp. v. Twombly*,
        550 U.S. 544 (2007) ....................................................................................................1

9    *Fortinet, Inc. v. Forescout Tech., Inc.*,
        543 F.Supp.3d 814 (N.D. Cal. 2021)……………………………………………..12

10

11   *In re Seagate Technology, LLC*,
        497 F.3d 1360, 1371 (Fed. Cir. 2007)………………………………………………12

12   *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
        714 F.3d 1277, 1284 (Fed. Cir. 2013) ...............................................................4

13   *Lifetime Indus., Inc. v. Trim-Lock, Inc.*,
        869 F.3d 1372 (Fed. Cir. 2017)...........................................................................4

14

15

16   **Federal Statutes**                                                                              **Page**

17   35 U.S.C. §271 .............................................................................................................2, 11

18   **OTHER AUTHORITIES PAGE(S)**                                                          **Page**

19   Fed. R. Civ. P. 8(a)(2) .................................................................................................4

20   Fed. R. Civ. P. 12(b)(6) ...............................................................................................1

21   Fed. R. Civ. P. 15.........................................................................................................1

22   FED. R. CIV. P. 15 advisory committee's note (1963) .................................................1

23

24

25

26

27

iii

28

1

## I.     INTRODUCTION

Plaintiff Cyph, Inc. ("Cyph" or "Plaintiff"), by and through the undersigned Counsel, hereby opposes Defendant Zoom Video Communications, Inc.'s ("Zoom" or "Defendant") Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion") Under Fed. R. Civ. P 12(b)(6) and respectfully requests the Court to deny said Motion.

The Court should deny Zoom's Motion, because Cyph has "sufficiently plead a claim of infringement" as set forth under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Particularly, through its Second Amended Complaint ("SAC"), Cyph has directly responded to the shortcomings of the First Amended Complaint ("FAC") identified by the Court in its Order granting, in part, and denying, in part, Zoom's Motion to Dismiss Cyph's FAC (*see* Dkt. 85).  Furthermore, through its SAC, Cyph has provided non-limiting and exemplary Claim Charts comparing Zoom Products to each Claim of the Asserted Patents that have been alleged to have infringed Cyph's Patents, and established the inexcusable correspondences between the limitations and steps practiced by Zoom's products and services, and the limitations and steps of the Claims of the Asserted Patents. Therefore, Cyph's SAC has sufficiently placed Zoom on notice of what is being accused and the grounds upon which it rests. *Twombly*, 550 U.S. at 555.

Further, Cyph has "sufficiently plead a claim of infringement" in its SAC that Zoom is responsible for its users' performance, because through its products and services, as well as the instructions to, and interactions with, its human users, Zoom does "direct or control" its users' actions. *See Akamai.*, 797 F.3d at 1022.

Therefore, according to *Twombly, Iqbal* and *Akamai*, Cyph has, by its SAC and Exhibits, "plausibly allege[d] that the accused product practices each of the limitations found in at least one asserted claim" of each Asserted Patent. *Id.*

Accordingly, Zoom's Motion should be denied.

1

1    Zoom spent half of its Motion discussing Cyph's First Amended Complaint ("FAC") and

2    why it was defective. *See* Dkt. 91. However, after Cyph filed its SAC in compliance with Court's

3    Order re Cyph's FAC, the SAC has superseded the original Complaint and FAC. *See* Fed. R. Civ.

4    P. 15; *see also*, FED. R. CIV. P. 15 advisory committee's note (1963).  Other than summarizing the

5    procedural history leading up to the Motion *sub judice*, Zoom's discussions regarding Cyph's FAC

6    are merely a red herring to the substantive issues already decided by this Court and are insufficient

7    to support the alleged defects of the SAC raised in its Motion.

8    In the relevant part of its Motion, Zoom alleges that Cyph has failed to establish its direct,

9    indirect, and willful infringement claims. Dkt. 91, 11-19. Since such statements are far from being

10   true, Cyph respectfully disagrees. For example, in its SAC, Cyph has detailed that Zoom not only

11   directs and controls its human users' performances, but also forms a joint enterprise with its human

12   users in conducting the infringing E2EE encryption. *See Akamai*, 797 F.3d at 1022. Therefore, Cyph

13   has sufficiently pled its direct infringement claim against Zoom. Furthermore, by establishing that

14   Zoom directs and encourages its human users to actively "enable" or "turn on" the infringing

15   patented solution, Cyph has sufficiently plead its indirect infringement claim against Zoom. Finally,

16   the willful infringement claim is also well-pleaded as Zoom continues, after having the actual

17   knowledge for so long of the Asserted Patents, to offer for sale, sell, solicit and instruct users to

18   execute the steps in the patented solution. Cyph submits Zoom's knowledge, malicious and

19   egregious behaviors are very clear.

20   Therefore, in light of the summary above and the arguments presented below, Defendants'

21   Motion to Dismiss Plaintiff's SAC should be denied.

22

23   **II.    STATEMENT OF FACTS**

24   This is a civil action for Zoom's infringement of U.S. Patent No. 9,948,625 B2 (the "'625

25   Patent"), U.S. Patent No. 10,701,047 (the "'047 Patent"), U.S. Patent No. 10,020,946 (the "'946

26   Patent"), U.S. Patent No. 9,794,070 (the "'070 Patent"),  U.S. Patent No. 10,003,465 (the "'465

27   Patent"), and U.S. Patent No. 9,954,837 (the "'837 Patent") (collectively referred to as the "Asserted

28

2

Patents"), pursuant to 35 U.S.C. §271, and to recover damages, attorney's fees, and costs. Cyph's Asserted Patents are directed to an End-To-End-Encryption ("E2EE") solution for highly secure communications on networks.

Zoom offers for sale, sells, and solicits users to download, application software for Zoom's communication services ("Zoom Apps") for its Zoom Meetings, Zoom Marketplace, Zoom Video Webinars, Zoom Chat, Zoom Phone System, Zoom Events, Zoom Rooms and Workspaces, Zoom Developer Platform ("Zoom Products"). Zoom Apps are available for download at app stores and Zoom's official website. Zoom users can participate in Zoom Products, using Zoom Apps, using Zoom Devices, or through a standard web browser. *See* Dkt. 88, Ex. S.

After encountering considerable security issues (i.e. Zoom Bombs), Zoom acquired Keybase in order to boost security in its products and services. Keybase is a provider of secure messaging and file-sharing services and is a director competitor of Cyph. Prior to its purchase by Zoom, Keybase implemented a network that used Plaintiff's patented E2EE solution. Zoom adopted the infringing Keybase solution.

Since then, Zoom offers for sale, sells, solicits and instructs users that if they wish to receive the benefits of E2EE-enabled communication they must download, application software built for a common media a communications platform ("Zoom Communications Platform"), enable E2EE encryption by selecting enable E2EE encryption in the application software, select whether the current meeting is to be E2EE encrypted and then cause the computer system, being used by the human, to execute the steps in the method including generating a shared symmetric key to begin a communication session among a group of users. The Zoom Communications Platform shares a common encryption core and includes for Zoom's communication services ("Zoom Apps") for its Zoom Meetings, Zoom Marketplace, Zoom Video Webinars, Zoom Chat, Zoom Phone System, Zoom Events, Zoom Rooms and Workspaces, Zoom Developer Platform ("Zoom Products"). *See* Dkt. 88, Ex. S.

PLAINTIFF'S OPP. TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    Zoom users engage the Zoom Communications Platform by downloading application

2    software including the Zoom Client, enable by selection E2EE encryption, select whether the current

3    meeting is to be E2EE encrypted and then cause the computer system to execute the steps in the

4    method as recited in the claims of the Asserted Patents including generating a shared symmetric key

5    to begin a communication session among a group of users. The Zoom user, by performing the above

6    noted steps, as instructed by Zoom, can receive the benefit of participating in media presentations

7    or communications sessions by following Zoom's instructions, said communications receiving the

8    benefit of E2EE encryption, and using Zoom Products, using Zoom Apps, using Zoom Devices, or

9    through a standard web browser all. *See* Dkt. 88, Ex. S.

10   ## III.    LEGAL STANDARD

11       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

12   accepted as true, to state a claim to relief that is plausible on its face. A claim has facial

13   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

14   inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal

15   quotations and citations omitted). "When there are well-pleaded factual allegations, a court should

16   assume their veracity and then determine whether they plausibly give rise to an entitlement to

17   relief." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will...be a

18   context-specific task that requires the reviewing court to draw on its judicial experience and

19   common sense." *Id.*

20       In the patent infringement context, a complaint should "place the alleged infringer 'on notice

21   of what activity . . . is being accused of infringement." *Lifetime Indus., Inc. v. Trim-Lock, Inc.*, 869

22   F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,

23   714 F.3d 1277, 1284 (Fed. Cir. 2013)). Sufficient notice of infringement, however, is distinguishable

24   from proving infringement and a patentee "need not prove its case at the pleadings stage" *Bot M8*

25   *LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). In response to Zoom's earlier

4

1    Motions, this Court recognized that a "blanket element-by-element pleading standard for patent

2    infringement" in not the applicable standard.  Dkt 85, 6 (citing to *Bot M8*, 4 F.4th at 1352).  Rather,

3    this Court recognizes that a flexible inquiry into "whether the factual allegations in the complaint

4    are sufficient to show that the plaintiff has a plausible claim for relief" is all that's required at the

5    pleading stage.  *Id.*

6           As described in further detail below, Cyph respectfully submits the SAC sufficiently alleges

7    plausible claims for relief.

8

9    **IV.    ARGUMENTS**

10          **A.    Cyph Has Plausibly Alleged Infringement of The Asserted Patents.**

11          As noted above, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

12   matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial

13   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

14   inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Cyph, by

15   its SAC and the incorporated Exhibits, has clearly pled "factual content that allows the court to draw

16   the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Specifically, in

17   its SAC, Cyph details the elements of the Asserted Patents (Dkt. 88, pp. 3-6), Zoom's and Keybase's

18   products and services (Dkt. 88, pp. 7-13), as well as explains how through their products and

19   services, Zoom does, in fact, directly infringe Cyph's Asserted Patents (Dkt. 88, pp. 14-26).

20          In its Order granting, in part, and denying, in part, Zoom's Motion to Dismiss Cyph's FAC

21   ("FAC Order"), this Court directed Cyph to consider *Akamai* and granted Cyph leave to amend its

22   complaint accordingly.  Dkt 85, 4-6.  Specifically, the FAC Order granted Cyph leave to amend its

23   complaint with respect to the '625 Patent, the '047 Patent, the '070 Patent, the '465 Patent, and

24   the '837 Patent in view of the Court's single actor analysis. Dkt. 85, 6.  Apart from its single actor

25   holding, the FAC Order **denied** Zoom's motion to dismiss with respect to the remaining issues

26   argued by Zoom concerning the '625 Patent (Dkt. 85, 7), the '047 Patent (Dkt. 85, 11), and the '465

27                                                  5

28

1   Patent (Dkt. 85, 10).  As discussed further below, the FAC Order grants Cyph additional leave to

2   amend its complaint with respect to the '070 Patent and the'837 Patent.

3        In other words, under the FAC Order, the *only* remaining issue with respect to the '625 Patent,

4   the '047 Patent and the '465 Patent is the single actor issued discussed on pages 4 – 6 of the FAC

5   Order.  *Compare* Dkt 85, 4 – 5 (*citing Akamai,* 797 F. 3d at 1022) *with* Dkt. 85, 7 (the '625 Patent),

6   Dkt. 85, 10 (the '465 Patent) and Dkt. 85, 11 (the '047 Patent). The SAC plausibly alleges

7   infringement of the '625 Patent, the '047 Patent and the '465 Patent, as discussed below; Zoom's

8   arguments beyond the single actor question with respect to the '625 Patent, the '047 Patent and

9   the '465 Patent were denied in the FAC Order and remain moot.

10        Similarly, the SAC plausibly alleges infringement of both the'070 Patent and the'837 Patent,

11   as discussed below, with reference to the FAC Order.

12

13       **1.    The '625 Patent**

14        As specified in the SAC (¶¶58-70), the '625 Patent contains two claims including one

15   independent claim (Claim 1) and one dependent claim (Claim 2). A non-limiting and exemplary

16   Claim Chart comparing Zoom Products to Claims 1 and 2 of the `625 Patent is attached to the SAC

17   as Exhibit G, which shows Zoom practices each limitation of both claims of the '625 Patent. In

18   addition to the SAC, and in compliance with both Patent Local Rule 3-1 and the Joint

19   Stipulation/Order regarding Patent Local Rule deadlines (*see* Dkt. 87), Cyph has served Zoom a

20   detailed claim chart of the '625 Patent containing extensive pinpoint citations to source code.  Thus,

21   Zoom is adequately on notice, and through its SAC, Cyph as plausibly pled factual allegations

22   against Zoom sufficient to show that a claim for relief.  *Bot M8*, 4 F.4th at 1352.

23        For example, in correspondence to the steps recited in Claim 1 of the `625 Patent of (a)

24   generating a shared symmetric key to begin a communication session among a group of users by a

25   first user; (b) distributing by the first user, the generated shared symmetric key to each user in the

26   group of users; (c) communicating within the communication session among a group of users, (d)

27

28

6

wherein each user encrypts a message to the group of users to be distributed through the communication session using the generated shared symmetric key, and each user decrypts a message received from the communication session using the generated shared symmetric key; and (e) wherein additional users are added to the existing communication session when the first user distributes to the additional users the generated shared symmetric key, Zoom describes with respect to a "Host" user or "Meeting leader" user, after said user downloads the application software , enable by selection E2EE encryption, and select whether the current meeting is to be E2EE encrypted, that "at all times, one authorized Zoom client will be present in a meeting and considered the meeting 'leader'", and that "[t]his client will have the responsibility of generating the shared meeting key, authorizing new meeting participants, kicking out unwanted participants, and distributing keys" (Dkt. 88, Ex. G: e2e-V3.2 §3.2); according to other quotations from passages of E2E-v3.2 at §§ 3.7.3, 3.2, 3.4 and 3.7.5 as set forth in the Claim Chart at Dkt. 88, Exhibit G, Zoom describes specific steps/actions that are performed by the "Host" or "Meeting leader" user including "When the leader joins the meeting meetingID, they:

1. Fetches meetingUUID from the Zoom infrastructure.

2. ***Generates a symmetric 32-byte seed MK*** using a secure random number generator.

3. Gets the full list of participants I from the MMR.

4. ***For each participant i ∈ I, it runs the "Participant Join (Leader)" subroutine for I***," (emphasis added).

Further, according to another quotation from a passage of E2E-v3.2 at sections 3.4 and 3.7 thereof as set forth in the Claim Chart at Dkt. 88, Exhibit G, Zoom for example describes the "Host" or "Meeting leader" user conducts steps/actions to admit new participants to the group including "Meeting leader…This client will have the responsibility of generating the shared meeting key, ***authorizing new meeting participants***, kicking out unwanted participants, and ***distributing keys.***" (emphasis added) Through quotations including but not limited to above, the Claim Chart shows

7

that Zoom's products and services practice elements and steps that are identical to both claims of the '625 Patent.

While a "blanket element-by-element pleading standard for patent infringement" in not required, the SAC includes "factual allegations [that] are sufficient to show [Cyph] has a plausible claim for relief" under the '625 Patent. *Bot M8*, 4 F.4th at 1352.

### 2.    The '047 Patent

As specified in the SAC (¶¶71-83), the `047 Patent contains four claims including one independent claim (Claim 1) and three dependent claims (Claims 2-4). A non-limiting and exemplary Claim Chart comparing Zoom Products to Claims 1 through 4 of the `047 Patent is attached to the SAC as Exhibit H, which shows Zoom practices each limitation of all claims of the '047 Patent. In addition to the SAC, and in compliance with both Patent Local Rule 3-1 and the Joint Stipulation/Order regarding Patent Local Rule deadlines (*see* Dkt. 87), Cyph has served Zoom a detailed claim chart of the '047 Patent containing extensive pinpoint citations to source code.  Thus, Zoom is adequately on notice, and through its SAC, Cyph as plausibly pled factual allegations against Zoom sufficient to show that a claim for relief.  *Bot M8*, 4 F.4th at 1352.

For example, in correspondence to the steps recited in Claim 1 of the `047 Patent after a user downloads the application software , enable by selection E2EE encryption, and select whether the current meeting is to be E2EE encrypted, of (a) generating a shared symmetric key to begin a communication session among a group of users by a first user, (b) wherein the first user is the user initiating the group communication session and (c) wherein the communication session is a long-lived session; (d) distributing by the first user, the generated shared symmetric key to each user in the group of users; (e) communicating within the communication session among a group of users, (f) each user encrypts a message to the group of users to be distributed through the communication session using the generated shared symmetric key, (g) each user decrypts a message received from the communication session using the generated shared symmetric key, and (h) wherein each encrypted group communication comprises a short-lived secure communication session, the Claim Chart in Dkt. 88, Exhibit H, lifts direct quotations from passages of Zoom's published documents,

8

particularly E2E-v3.2, that clearly shows Zoom's products and services practice elements and steps that are identical to Claims 1-4 of the '047 Patent.  Such quotations were sufficient in the FAC Order (*see* Dkt. 85, 11) were sufficient in the FAC, and remain sufficient in SAC.  The SAC does not raise any new issues with respect to the '047 Patent.

The same arguments present above with respect to the above noted quotations from E2E-v3.2 unequivocally identifying features of Zooms products and services that read on all steps of Claims 1 and 2 of the `625 Patent, apply as well to all steps of Claims 1-4 of the '047 Patent, as further detailed in the SAC ¶¶71-83.

As noted above, a "blanket element-by-element pleading standard for patent infringement" in not required and the SAC includes "factual allegations [that] are sufficient to show [Cyph] has a plausible claim for relief" under the '047 Patent. *Bot M8*, 4 F.4th at 1352.

### 3.     The '465 Patent

As specified in the SAC (¶¶98-116), the `465 Patent contains three independent claims (Claims 1, 8, 15) and fifteen dependent claims. a non-limiting and exemplary Claim Chart comparing Zoom Products to Claims 1, 6, 17 of the '465 Patent is attached to the SAC as Exhibit K. In addition to the SAC, and in compliance with both Patent Local Rule 3-1 and the Joint Stipulation/Order regarding Patent Local Rule deadlines (*see* Dkt. 87), Cyph has served Zoom a detailed claim chart of the '465 Patent containing extensive pinpoint citations to source code.  Thus, Zoom is adequately on notice, and through its SAC, Cyph as plausibly pled factual allegations against Zoom sufficient to show that a claim for relief.  *Bot M8*, 4 F.4th at 1352.

Zoom Products practices a method, after a user downloads the application software , enable by selection E2EE encryption, and select whether the current meeting is to be E2EE encrypted, comprising: generating a shared symmetric key, using an integrated circuit chip, to exchange authentication information among a communications group; distributing the generated shared symmetric key to each communicating party in the communications group; exchanging authentication information among members of the communications group. (Dkt. 88, Ex. K.)

Furthermore, in Zoom Products, each communicating user, after said user downloads the application software, enable by selection E2EE encryption, and select whether the current meeting

9

is to be E2EE encrypted: encrypts the authentication information using the generated shared symmetric key and sends the encrypted authentication information to other members of the communications group and receives the encrypted authentication information from another communicating party in the communications groups and decrypts the received encrypted authentication information using the generated shared symmetric key. (Dkt. 88, Ex. K.)

As noted above, Zoom clearly and unequivocally sets forth in E2E-v3.2 with respect to a "Host" or "Meeting leader" (i.e. "First User") that "at all times, one authorized Zoom client will be present in a meeting and considered the meeting 'leader'. This client will have the responsibility of generating the shared meeting key, authorizing new meeting participants, kicking out unwanted participants, and distributing keys", said technique infringing the '465 Patent. Cyph's SAC also further detailed the correspondences between what Zoom set forth in E2E-v3.2 and the Claims of the '465 Patent.  Such quotations were sufficient in the FAC Order (*see* Dkt. 85, 10), were sufficient in the FAC, and remain sufficient in SAC.  The SAC does not raise any new issues with respect to the '465 Patent.

As noted above, a "blanket element-by-element pleading standard for patent infringement" in not required and the SAC includes "factual allegations [that] are sufficient to show [Cyph] has a plausible claim for relief" under the '465 Patent. *Bot M8*, 4 F.4th at 1352.

### 4.    The '070 Patent

As specified in the SAC (¶¶90-97), the `070 Patent contains one independent claim (Claim 1) and one dependent claim (Claim 2). A non-limiting and exemplary Claim Chart comparing Zoom Products to Claim 1-2 of the `070 Patent is attached to the SAC as Exhibit J.  In addition to the SAC, and in compliance with both Patent Local Rule 3-1 and the Joint Stipulation/Order regarding Patent Local Rule deadlines (*see* Dkt. 87), Cyph has served Zoom a detailed claim chart of the '070 Patent containing extensive pinpoint citations to source code.  Thus, Zoom is adequately on notice, and through its SAC, Cyph as plausibly pled factual allegations against Zoom sufficient to show that a claim for relief.  *Bot M8*, 4 F.4th at 1352.

Zoom Products practices a method, after a user downloads the application software , enable by selection E2EE encryption, and select whether the current meeting is to be E2EE encrypted, comprising: sending a request, by a first user on a first device, to a server, the request comprising requesting the server open an ephemeral communication session with a second user on a second

10

device; allocating resources, by the server, to begin the ephemeral communication session between the first user and the second user; generating a unique ephemeral communication session identifier by the server for each ephemeral communication session and transmitting the unique ephemeral communication session identifier to the first user; transmitting, by the first user, the unique ephemeral communication session identifier to the second user using a second communication channel; connecting, by the second user, to the first user through the ephemeral communication session using the unique ephemeral communication session identifier; and connecting, by the first user, to the second user through the ephemeral communication session using the unique ephemeral communication session identifier. (Dkt. 88, Ex. J) Such method is clearly in correspondence to the steps of both Claims of the '070 Patent. (*Id.*).

For example, Cyph's SAC describes in considerable detailed the correspondences between what Zoom set forth in E2E-v3.2 and the Claims of the '070 Patent. Dkt. 88, 20 – 97. With respect to the FAC Order, the Court notes that "Cyph points to language from the Zoom E2E-v3.2 paper that it argues could support its allegations that the Accused Products include a first and second communication channel" and then concludes this language was not in Cyph's FAC. Cyph has corrected its error and has plausibly pled factual allegations by direct quotation from Zoom's documentation (*e.g.*, section 3.4 of E2E-v3.2) regarding the second communications channel in paragraph 96 of the SAC. Dkt. 88, 21.

Thus, while a "blanket element-by-element pleading standard for patent infringement" in not required. the SAC includes "factual allegations [that] are sufficient to show [Cyph] has a plausible claim for relief" under the '070 Patent. *Bot M8*, 4 F.4th at 1352.

### 5.     The '837 Patent

As specified in the SAC (¶¶117-121), the '837 Patent contains one claim (Claim 1). A non-limiting and exemplary Claim Chart comparing Zoom Products to Claim 1 of the `837 Patent is attached to the SAC as Exhibit P. In addition to the SAC, and in compliance with both Patent Local Rule 3-1 and the Joint Stipulation/Order regarding Patent Local Rule deadlines (*see* Dkt. 87), Cyph has served Zoom a detailed claim chart of the '837 Patent containing extensive pinpoint citations to source code.  Thus, Zoom is adequately on notice, and through its SAC, Cyph as plausibly pled factual allegations against Zoom sufficient to show that a claim for relief.  *Bot M8*, 4 F.4th at 1352.

PLAINTIFF'S OPP. TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED
COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Zoom Products practices a method, after a user downloads the application software , enable by selection E2EE encryption, and select whether the current meeting is to be E2EE encrypted, comprising: requesting, by a first user on a first device, to open a channel of communication to a second user on a second device; confirming the first user's identity and the second user's identity through a second channel that is separate from the communication channel using one-on-one encryption message directly sent to the second device through the second channel, wherein the second channel comprises at least one of a Short Message Service (SMS) channel, a Multimedia Messaging Service (MMS) channel, an email channel, and a social networking service channel; and communicating through the communication channel after each user has validated the other user's identification through the second channel.

Specifically, Zoom clearly and unequivocally sets forth in its publication "Keybase For Chat" at   https://book.keybase.io/chat (hereinafter "Keybase For Chat") "[t]o start new chats quickly, you can find your contacts by name, email, or phone number; or by username from other platforms like Twitter, Facebook, and GitHub"… and in its publication "Keybase Book Proofs" at https://book.keybase.io/account#proofs (hereinafter "Keybase Proofs") "[t]he best way to let others know that your Keybase account belongs to you is to tell them in person. The next best way is through proofs"… "[s]ome people may already know you as you through your other accounts. But proofs are public, so Keybase can (and does) check them, and importantly, anyone can. Publicly proving that you are who you say you are is an important part of what makes Keybase accounts so secure and trustworthy",…"If a proof changes, indicating that your Keybase or other social accounts may have been compromised, Keybase automatically warns the people you interact with", and…"Proofs link your Keybase account to your other online accounts", said technique infringing the '837 Patent.

In the FAC Order, the Court notes that "the Proofs document does not reference anything resembling a communication channel … [r]ather, the documents instruct that the best way to verify a Keybase account …or, alternatively, to check the "other social accounts".  Dkt. 85, 9.  The Court then concludes that "neither of these forms of verification involve a message being sent through a communication channel".  *Id.*  This omission has been corrected in the SAC.  *See, e.g.,* Dkt. 88, 25, paragraph 121 (referencing Keybase for Chat).  Cyph respectfully submits a "chat" as described in SAC and in Zoom's publication "Keybase for Chat" (found at https://book.keybase.io/chat)

PLAINTIFF'S OPP. TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED
COMPLAINT

plausibly alleges a "message being sent through a communication channel" as noted by the FAC Order.  Dkt. 85, 9.

In its Motion, Zoom argues that Cyph has not alleged any basis for piercing the corporate veil.  Dkt. 91, 14.  Cyph's SAC, however, alleges that Keybase is a *division* of Zoom.  *See, e.g.,* Dkt. 85, 26 -33, Ex. S.  Zoom, in its Motion, has provided zero evidence to support its argument that Cyph would be *required* to pierce the corporate veil; that Keybase is a separate entity.

After discussing the merits of the '837 Patent and the Cyph treatment of the '837 Patent in the SAC, Zoom's Motion then goes on to argue that the '837 Patent is not being asserted.  Cyph respectfully disagrees; the '837 Patent is unquestionably being asserted.  *See, e.g.,* Dkt. 85, 25 – 26.  To the extent that certain typographical errors and omissions occurred in preparing the SAC from the FAC, Cyph submits such changes amount to harmless errors and omissions.  In fact, subject to Dkt. 75, Cyph presented Zoom with a Third Amended Complaint ("TAC") that corrects any typographical errors with respect to the '837 Patent.  In according with Dkt. 75, however, Zoom expressly rejected *any* stipulation with respect to the TAC – including any corrections to typographical errors that appeared in the SAC with respect to the '837 Patent.

As noted previously, a "blanket element-by-element pleading standard for patent infringement" in not required and the SAC includes "factual allegations [that] are sufficient to show [Cyph] has a plausible claim for relief" under the '465 Patent. *Bot M8*, 4 F.4th at 1352.

### 6.    The '946 Patent

As specified in the SAC (¶¶84-89), the '946 Patent contains one independent claim (Claim 1). A non-limiting and exemplary Claim Chart comparing Zoom Products to Claim 1 of the `946 Patent is attached to the SAC as Exhibit I.  In addition to the SAC, and in compliance with both Patent Local Rule 3-1 and the Joint Stipulation/Order regarding Patent Local Rule deadlines (*see* Dkt. 87), Cyph has served Zoom a detailed claim chart of the '946 Patent containing extensive pinpoint citations to source code.  Thus, Zoom is adequately on notice, and through its SAC, Cyph as plausibly pled factual allegations against Zoom sufficient to show that a claim for relief. *Bot M8*, 4 F.4th at 1352.

In its FAC Order, this Court completely denied Zoom's motion to dismiss with respect to '946 Patent.  *See, e.g.*, Dkt. 85, 6 ("The Court notes that the single actor analysis does not apply to

13

the '946 Patent); Dkt. 85, 12 ("Accordingly, the Court DENIES Zoom's motion to dismiss this claim").

Similarly to the other Asserted Patents, in correspondence to the steps recited in Claim 1 of the '946 Patent, in Zoom Products, Zoom Products after a user downloads the application software , enable by selection E2EE encryption, and select whether the current meeting is to be E2EE encrypted, practices a method comprising: downloading, by a client computing device, an encrypted data block from a server, wherein the encrypted data block includes a server-stored symmetric key; and decrypting, by the client computing device, the encrypted data block with a previously stored symmetric key that is stored locally to retrieve the server-stored symmetric key from the encrypted data block, generating a new shared-symmetric key; creating a new encrypted data block comprising the new shared-symmetric key and transmitting the new encrypted data block to the server, which are identical steps to Claim 1 of the '946 Patent. The SAC and its Exhibit I detailed further as to Zoom's service process and how it infringes the '946 Patent.

To the extent that certain typographical errors and omissions occurred in preparing the SAC from the FAC, Cyph submits such changes amount to harmless errors and omissions.  In fact, subject to Dkt. 75, as noted above Cyph presented Zoom with a TAC that corrected various typographical errors with respect to the SAC.  In according with Dkt. 75, however, Zoom expressly rejected *any* stipulation with respect to the TAC – including any corrections to typographical errors that appeared in the SAC. Such quotations appearing in the FAC and SAC were sufficient in the FAC Order (*see* Dkt. 85, 10), were sufficient in the FAC, and remain sufficient in SAC.  The SAC does not raise any new issues with respect to the '465 Patent.

Thus, while a "blanket element-by-element pleading standard for patent infringement" in not required. the SAC includes "factual allegations [that] are sufficient to show [Cyph] has a plausible claim for relief" under the '070 Patent. *Bot M8*, 4 F.4th at 1352.

**7.      Infringement of Asserted Patents**

Overall, for each and all the Asserted Patents, Cyph has provided non-limiting and exemplary Claim Charts comparing Zoom Products to each and all asserted Claims of said Asserted Patents. Cyph has also explained in detail how the steps and limitations of practice in Zoom Products are in correspondences to the Claims of the Asserted Patents, which cannot be explained in any other way than that Zoom has had knowledge and information of Cyph's patented technology, and

1  willfully makes, sells, offers to sell, uses, and imports its products that infringe the Asserted Patents.

2  Therefore, when accepted as true, the facts contained in Cyph's SAC are sufficiently plausible to

3  allow the court to draw the reasonable inference that Zoom is liable for the alleged infringement.

4  *Iqbal*, 556 U.S. at 678.

5      **B.**    **Cyph Has Provided Sufficient Facts That Supports Zoom's Direct Infringement**

6              **of the Asserted Patents.**

7        Contrary to Zoom's statements, Cyph has sufficiently established that Zoom is responsible

8  for its users' performance, because through its products and services, as well as the interactions with

9  its human users, Zoom does "direct or control" its users' actions. *Akamai.*, 797 F.3d at 1022. As

10  explained in the SAC, Zoom conditions the "account owners and admins," and other meeting

11  participants who are human users, during their participation in any communications session via the

12  Zoom platform or receipt of the benefit of end-to-end encryption of communications across the

13  Zoom platform, as it requires the account owners, admins and other meeting participants to perform

14  certain steps via the computer system of the method as recited in the Claims of the Asserted Patents.

15  For example, Zoom requires its human users to "turn on" E2EE by downloading the application

16  software, enabling by selection E2EE encryption, and selecting whether the current meeting is to be

17  E2EE encrypted, to receive the benefit of E2EE encryption of their communications. And all

18  meeting participants, again also human users, are required by Zoom to use one of "the Zoom desktop

19  client, mobile app, or Zoom Rooms" to even participate in E2EE encryption. (Dkt. 88, p. 11). The

20  human users' performances of "turn on" the E2EE encryption function. Thus, Zoom itself through

21  its establishment of the E2EE encryption in its products and services, controls and directs the

22  establishment of the manner or timing of that performance. *Id.*

23        In response to these clear factual allegations, Zoom, in its Motion, asserts that "the cases in

24  which the Federal Circuit has found a 'conditional benefit' have ***all*** involved such conditioning

25  occurring in the physical world" (emphasis added) without any support.  Dkt. 91, 12.  Rather, Zoom

26  cites to three cases but fails to discuss *Akamai Techs., Inc. v. Limelight Networks, Inc.*, which deals

27   

28

PLAINTIFF'S OPP. TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED
COMPLAINT

with software and not the "physical world" (as described in Zoom's Motion). *Id.; see also Akamai,* 797 F.3d at 1022.

Further, Cyph has also established that Zoom has formed a joint enterprise with its human users, whether meeting participants or account owners and admins, in conducting E2EE encryption communications such that there exists:

(1) an agreement, express or implied, among the members of the group (e.g. service agreements);

(2) a common purpose to be carried out by the group (e.g., conducting a communications session and specifically E2EE encryption of their communications);

(3) a community of pecuniary interest in that purpose, among the members (e.g., conducting a communications session; Zoom and 3rd parties collecting service fees attributable to communications session); and

(4) an equal right of control (e.g., conducting a communications sessions). *Id.*

Such factual allegations, as adequately pled in Cyph's SAC, do not amount to "conclusory statements" as asserted by Zoom in its Motion. *See* Dkt. 91, 13. Rather, such statements amount to "factual allegations … sufficient to show that [Cyph] has a plausible claim for relief" against Zoom. *Bot M8*, 4 F.4th at 1352.

Additionally, in response to the Court's Order re FAC, Cyph has clarified in the SAC that the term "user" as recited in certain of the claims of the Asserted Patents "corresponds to a human (not shown) and a computer system 600 as illustrated in Fig. 3 of the specification of each of the asserted patents, wherein the human provides 'user inputs' (i.e. visual, auditory, keystrokes, mouse clicks or tactile feedback) to the computer system 600 to cause the computer system 600 to 'read the inventive instructions on the program storage devices and follow these instructions to execute the methodology of the embodiments herein' as recited in the Asserted Claims." Dkt. 88, Exs. G-K, P, n.1; *see also*, Order re FAC at 5. This clarification makes it clear that Zoom practices each step

16

1   of the methods claimed in the Asserted Patents, as its "users" encompass software controlled by

2   Zoom. *See* Order re FAC, 5-6.

3          Therefore, Cyph has sufficiently established both elements set forth in *Akamai,* 797 F.3d at

4   1022. It has sufficiently pled direct infringement of the Asserted Patents by Zoom.

5          **C.      Cyph Has Sufficiently Pled Indirect Infringement by Zoom.**

6          In its SAC, Cyph has explained in detail, the steps practiced by Zoom to induce, instruct,

7   require, and/or encourage its partners (through agreements plausibly pled in the SAC) to infringe

8   and/or human users to "turn on" the infringing E2EE encryption functions. Dkt. 88, 27 - 30. And

9   once such function is turned on, the E2EE encryption that practices the steps and limitations of the

10  Claims of Cyph's Asserted Patents is enabled. Therefore, the human users and/or partners who "turn

11  on" such function become the direct infringers of the Asserted Patents. However, said human users

12  and/or partners, whether meeting participants or account owners and admins, only perform such

13  steps because Zoom instructs and encourages them to do so. Moreover, Zoom requires such

14  performances on the human users' end for them to be able to receive the benefit of E2EE encryption

15  of their meeting communications. Therefore, under 35 U.S.C. § 271(b), Zoom is liable for induced

16  infringement as it has actively induced its partners and/or human users' infringement of the Asserted

17  Patents.

18         Similarly, as plausibly pled in pages 30 -32 of the SAC, under 35 U.S.C. § 271(c), Zoom is

19  liable for contributory infringement as it has actively and knowingly contributed to its partners

20  and/or human users' infringement of the Asserted Patents.

21

22         **D.      Cyph Has Sufficiently Pled Willful Infringement by Zoom.**

23         "In order to establish willful infringement, a patentee must show by clear and convincing

24  evidence that the infringer acted despite an objective likelihood that its actions constituted

25  infringement of a valid patent." *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir.

26

27                                                17

28

1  2007). Willful infringement claims should show both knowledge of the patents-in-suit and egregious

2  conducts. *Fortinet, Inc. v. Forescout Tech., Inc.*, 543 F.Supp.3d 814, 840 (N.D.Cal. 2021).

3         Here, Cyph has sufficiently pled willful infringement by Zoom because (1) Cyph's SAC has

4  specified that Zoom has had actual knowledge of the validity of the Asserted Patents and the fact

5  that such Patents are owned by Cyph, yet it continues to offer for sale, sell, and solicit users to

6  download, application software for Zoom's communication services that encompass the infringing

7  practices of the Asserted Patents. Such knowledge is supported by Zoom's receipt of Cyph's

8  October 28, 2022 letter, the service of Zoom's Complaint, FAC, and SAC; etc. And after the Claim

9  Charts Cyph has provided that clearly show the inexcusable correspondences between the steps

10 recited in the Claims of the Asserted Patents and passages of its published documents, namely, E2E-

11 v3.2 and KBFS; and the Parties have been corresponding and exchanging discovery requests and

12 responses, Zoom still continues such unauthorized use of said patented products and has been

13 directly benefiting from such use. There should not be any doubt of Zoom's malicious intent and

14 bad faith. Its behaviors are indeed egregious.

15 **V.    CONCLUSION**

16        For the foregoing reasons, Defendants' motion to dismiss the well-pleaded Second Amended

17 Complaint should be denied in its entirety.

18

19 Dated: February 1, 2023            By:    */s/ Carl I. Brundidge*
                                     **BRUNDIDGE & STANGER, P.C.**
20                                   CARL I. BRUNDIDGE (pro hac vice)
                                     DAVID E. MOORE (pro hac vice)
21                                   LEENA MAUSKAR (SBN 267828)

22

23                                   Attorneys for Plaintiff CYPH, INC.

24

25

26

27                                   18

28